THE STATE ex rel. CURTICE v. SMITH et al., Judges.

In Banc, July 3, 1903.

1. **Taxbill:** OBJECTIONS: CHARTER PROVISIONS WHICH BAR DEFENSE: INVALID IN TOTO. If the provision of the Kansas City charter which requires the property-owner to file all his objections to a taxbill with the board of public works within sixty days after their issue, whether those objections go to show that the taxbill is void or only irregular or erroneous, and which cuts off all right to plead or defend on any ground not specified in the objections made, is void, then it is void as a whole. The courts can not construe it to mean that it is valid when the objections urged against the taxbill are that they are irregular or erroneous, but that it is invalid when the objections are that the taxbill is void because of some inherent infirmity. The charter makes no such distinction, and the courts have no right to make it. That provision is either wholly good or wholly bad.

2. ————: OBJECTIONS: BARRED BY CHARTER: UNCONSTITUTIONALITY: APPEAL. Where in a suit on a special taxbill defendants are not entitled to make any defense at all if a certain provision of the city charter is constitutional, the appeal from a judgment for plaintiff is to the Supreme Court; and if it is sent to the Court of Appeals, and that court holds that this provision of the charter is not applicable and its constitutionality is not therefore to be considered, and reverses the judgment on other grounds, this court will compel that court by mandamus to transfer the cause.

State ex rel. v. Smith.

3. ———: APPEALS: CONSTITUTIONAL QUESTION: WHEN INVOLVED. A constitutional question is necessarily involved whenever the conclusion reached in the trial court could only be arrived at after a construction of the Constitution.

4. ———: ———: DEFENSE BARRED BY INVALID CHARTER: JUDGMENT FOR PLAINTIFF: MANDAMUS. Plaintiff sued on a special taxbill, and defendant set up six defenses, one being that the work for street improvement had not been open to competitive bidders, and plaintiff in reply pleaded a provision of the charter which required all objections to the validity of the taxbills to be filed with the board of public works within sixty days after their issue, and all objections not so filed could not thereafter be pleaded or proved in any court, and when defendants offered evidence in support of the six alleged grounds of the invalidity of the taxbills, plaintiff objected on the ground that they had filed no objections before the board of public works and under the charter they could not dispute the validity of the bills. The court overruled the objection, and plaintiff excepted, and the court also refused plaintiff's instruction which declared the charter provision valid, but nevertheless rendered judgment for plaintiff, who did not appeal, but defendant did, and the appeal was sent to the Court of Appeals, where it was held that the charter provision did not apply where the taxbill was void, and that the taxbill was void on the ground that there had been no competitive bidding for the work. *Held*, that the Court of Appeals erred in holding that the provision of the charter did not apply in case the taxbill was void, since by its plain terms it applies to all objections which would make it either invalid, irregular or erroneous, and as it was impossible for defendant to make any defense to the suit on the taxbill if that provision is constitutional, since it was admitted that the objections were not filed within sixty days, the appeal was to the Supreme Court, and this court by mandamus will compel its transfer.

5. ———: ———: ONCE DECIDED: STILL OPEN. The rule of practice in this State is that when a constitutional question has once been decided in a case, it can be raised in a subsequent case, and when so raised in the trial court it is so far in the case as to direct the course of the appeal to the Supreme Court.

## Mandamus.

PEREMPTORY WRIT AWARDED.

*Scarritt, Griffith & Jones* for relator.

(1)   The Constitution of Missouri confers upon this court exclusive jurisdiction on appeal from circuit

courts "in cases involving the construction of the Constitution of the United States or of this State." It is by virtue of this language that we assert the Supreme Court and not the Kansas City Court of Appeals has jurisdiction of the case of Curtice v. Schmidt on appeal from the circuit court. (2) The construction of the Constitution is involved because: The charter of Kansas City provides, "in any suit on any taxbill issued pursuant to this section (that is, in a suit on an installment taxbill) no objection or objections to it shall be pleaded or proved other than those that have been filed with the board of public works" by the owner of the land affected within sixty days from the date of the issue of the taxbill. Kansas City Charter, art. 9, sec. 23. No objection to the taxbill in question was filed with the board; such was the admitted fact; such was the fact found by the trial court in plaintiff's instruction number two. The plaintiff pleaded this fact in rebuttal of the defenses set up in the answer. He objected to any and all testimony tending to establish these defenses on the ground that the charter provision had not been complied with. These objections were overruled and excepted to by the plaintiff. He asked an instruction to the effect that the charter provision in question was constitutional and valid and that instruction was refused. It seems too plain for argument that if the charter law involved is constitutional the plaintiff will be deprived of his property in the taxbill in suit as the result of the adjudication of the two courts inferior to this court which have considered his demands, although he asserted in every way possible under the practice his claims under the State Constitution in the trial court, which were denied him, and in the appellate court, where they were evaded. If his constitutional claim is well founded there is no merit in the attack upon him. It can not be seriously disputed that if the charter provision in question is constitutional the judgment of the trial court is for the right party and should be affirmed,

and the record of that court shows that the plaintiff pleaded the facts essential to raise that constitutional question and to invoke the constitutional guaranty. It is asserted in the return to the alternative writ that respondent did not file a bill of exceptions in the Curtice case, which is true. But the defendants did; and it is difficult to understand how the record of a judicial proceeding (for the bill of exceptions becomes a part of the record) could avail more if it were evidenced by two bills of exceptions rather than one. It will be a strange doctrine when it is established that a court record by being printed or paid for by one party shall have a different significance or effect as to what is involved in that record than if printed or paid for by the other party. It is the record made and duly preserved in the trial court and now before this court that we rely upon to confer jurisdiction upon this court. It is said we did not appeal. It is equally true that we could not appeal. The judgment of the trial court gave the plaintiff all the relief that was asked. "Appeals are allowed only to those who are aggrieved by judgments, orders or decrees." State ex rel. v. Talty, 139 Mo. 391; Bennett v. Railroad, 105 Mo. 642; State ex rel. v. Smith, 141 Mo. 1; Kaukauna W. P. Co. v. Canal Co., 142 U. S. 254; State v. Pittsburg S. & C. Co., 41 La. Ann. 467; Minden v. Silverstin, 36 La. Ann. 912; State ex rel. v. Smith, 152 Mo. 444. The Court of Appeals in its opinion says: "At the close of the trial plaintiff requested the court to declare section 23, article 9, of the charter of Kansas City valid. . . . The decision [of this court] in this case is not based upon the conclusion that said charter provision is unconstitutional, but that it has no application in a suit upon a void taxbill. And this holding was approved in Barber Asphalt Paving Co. v. Ridge." We submit that this court in the Ridge case did not adjudicate that the charter had no application in a suit upon a void taxbill, but did adjudge that the charter provision when applied to a void taxbill was unconstitu-

tional and void as being in conflict with section 16, article 9, and sections 10 and 30 of article 2 of the State Constitution.  (3) It has, however, been expressly held by this court that because a constitutional question has been passed upon once, or oftener, by this court, if the same constitutional question is again raised in the record this court, and not the Court of Appeals, has jurisdiction of the suit upon appeal. State ex rel. Campbell v. St. Louis Court of Appeals, 97 Mo. 272; State ex rel. v. Kansas City Court of Appeals, 105 Mo. 299. It is also well settled that where the judgment of a circuit court necessarily involves the determination of a constitutional right, this court has jurisdiction of the case on appeal.   State ex rel. v. Smith, 141 Mo. 1; State ex rel. v. Smith, 150 Mo. 75; McCarty v. O'Bryan, 137 Mo. 584; Bank v. Bennett, 138 Mo. 494.

*N. F. Heitman* for respondents.

We call attention to the fact that the relator was not the losing party in the trial court.  Relator won his case on other questions.   The only point ruled against the relator in the lower court related to the sixty-day clause of the charter.   As to the eight-hour ordinance, and as to relator's instruction 4, the lower court ruled in favor of the relator and against the defendants.   On the sixty-day clause of the charter the Kansas City Court of Appeals simply ruled that that clause did not apply to taxbills which were absolutely void. The Court of Appeals in ruling that said sixty-day clause did not apply to the defense of monopoly which rendered the taxbills absolutely void, simply followed its previous ruling in Richter v. Merrill, 84 Mo. App. 150.  The Court of Appeals assumed that the sixty-day clause was constitutional, but construed it as not applying to taxbills which were void as distinguished from those which were merely voidable.   It had jurisdiction to do this. The constitutionality or unconstitutionality of the sixty-

day clause, was not necessarily involved.   It was not involved at all.   If ever involved, it was not involved on appeal, because not saved by either party.   If said clause did not apply, then it was immaterial whether the clause was constitutional or unconstitutional.   The lower court decided against the relator as to the sixty-day clause, and notwithstanding that fact, found in favor of the relator on other grounds.   This proves that the decision of the constitutionality or unconstitutionality of the sixty-day clause was not necessarily involved. Kirkwood v. M. & H. Co., 160 Mo. 118, decides: "To confer upon the Supreme Court jurisdiction upon appeal from a circuit court upon the ground that a constitutional question is involved, it must affirmatively appear that the decision is necessary to the determination of the case, and that it was decided by the court below in violation of the Constitution, and adverse to the rights of the party who appeals."   The Kansas City Court of Appeals in this state of the record thought they were bound by the decision in Ash v. Independence, 145 Mo. 121, and the following authorities to the same effect: Vansandt v. Hobbs, 153 Mo. 655; Browning v. Powers, 142 Mo. 322; Parlin & O. Co. v. Hord, 145 Mo. 117; James v. Association, 148 Mo. 1; Kirkwood v. Johnson, 148 Mo. 632; Vaughn v. Railroad, 145 Mo. 57; Hulett v. Railroad, 145 Mo. 35; Security Co. v. Donnell, 145 Mo. 431; Shewalter v. Railroad, 152 Mo. 544; Live Stock Co. v. Railroad, 157 Mo. 518; Kirkwood v. M. H. Co., 160 Mo. 111; Clark v. Porter, 162 Mo. 516; State v. Raymond, 156 Mo. 118; Coleman v. Cole, 158 Mo. 258. A party not appealing has no right to complain of error. C. & S. Co. v. Kelley, 91 Mo. App. 98; Sanderson v. Wirths, 44 Mo. App. 496; Sutton v. Dameron, 100 Mo. 141; Rogers v. Wolf, 104 Mo. 1; Meyers v. Stone, 40 Mo. App. 289; Wood v. Whitton, 66 Iowa 295.   Only errors against the party appealing can be considered in the appellate court.   Cannon v. McDaniel, 46 Texas 303; Seeley v. Mitchell, 85 Ky. 508; Williams v. Palmer,

2 Baxter (Tenn.) 488; Glass v. Gratehouse, 20 Ohio 503; Harding v. Larkin, 41 Ill. 413; Page v. People, 99 Ill. 424; Brennan v. Bank, 10 Colo. App. 368; City of Kansas v. Hill, 80 Mo. 537; Wickliffe v. Buckman, 12 B. Monroe (Ky.) 424. A party can not appeal from a judgment merely to have it affirmed. Green v. Blackwell, 32 N. J. Eq. 770. An appellate court, in disposing of an appeal, is confined to objections and exceptions of appellant only. Clark v. Porter, 162 Mo. 516; State v. Raymond, 156 Mo. 118; Vansandt v. Hobbs, 153 Mo. 655; Parlin & O. Co. v. Hord, 145 Mo. 117; Shewalter v. Railroad, 152 Mo. 551. The Court of Appeals clearly had jurisdiction to construe the sixty-day clause and determine whether or not its provisions applied to this particular case. This is all they did. By the sixty-day clause the charter-makers plainly meant to do nothing more or less than to write into the charter the doctrine of estoppel. It is well settled that a party can never be estopped by an act that is illegal and void. This doctrine is announced in Verdin v. St. Louis, 131 Mo. 98, in the sixth paragraph of the opinion by Judge BURGESS. Wheeler v. Poplar Bluff, 149 Mo. 36. A party can never be estopped by an act that is illegal and void. Keese v. City of Denver, 10 Colo. 122; Mulligan v. Smith, 59 Cal. 234; Wheeler v. Poplar Bluff, 149 Mo. 36; In re Sharp, 56 N. Y. 257; Miller v. City of Amsterdam, 149 N. Y. 289; Chicago v. Wright, 32 Ill. 192; Corrigan v. Gage, 68 Mo. 541; St. Louis v. Richardson, 76 Mo. 485; Nichols v. Bank, 55 Mo. App. 91; 2 Herman on Estoppel, 1365; Matlock v. Highstone, 39 Ind. 95; Hovey v. Stewart (Kas.), 26 Pac. 686; Hovey v. Parker, 26 Pac. 594; Galbreath v. Newton, 30 Mo. App. 399; Leavenworth v. Long, 6 Kan. 283; McLauren v. Grand Forks, 6 Dakota 397; Steckert v. Saginaw, 22 Mich. 110; State v. Railroad, 74 Mo. 167; Martin v. Zellerback, 38 Cal. 300; Cameron v. Stephenson, 69 Mo. 372; Keating v. Kansas City, 84 Mo. 419; Cheeney v. Brookfield, 60 Mo. 53; Eitelgeorge v. Building Assn., 69 Mo. 52; Spur-

lock v. Sproule, 72 Mo. 509; Acton v. Dooley, 74 Mo. 67; Rogers v. Marsh, 73 Mo. 64; Perkinson v. McGrath, 9 Mo. App. 28. This doctrine applies to all tribunals, boards and officers, who exercise judicial functions. If they act without authority, without jurisdiction, their proceedings are "not voidable, but simply void," and "produce no effect whatever." Stanton v. Ellis, 12 N. Y. 577; Borden v. Fitch, 15 John. 141; Wise v. Withers, 3 Cranch 331; Barritt v. Crane, 16 Verm. 250; Robinson v. Mathwick, 5 Neb. 255. The decision in Richter v. Merrill, 84 Mo. App. 150, and in this case, that the statutory limitation—the sixty-day clause—does not apply to taxbills that are absolutely void, is no novel rule of statutory construction. DeHaven v. Berendes, 135 Cal. 178; Steinmuller v. Kansas City, 3 Kan. App. 46; Matter of Application of Mayor, 49 N. Y. 150.

MARSHALL, J.—This is an original proceeding by mandamus, seeking to compel the respondents, as judges of the Kansas City Court of Appeals, to transfer to this court the case of J. M. Curtice v. Frank F. Schmidt and Mollie Schmidt, now pending in said Court of Appeals. The return to the alternative writ asserts the jurisdiction of the Kansas City Court of Appeals over said cause and contests the jurisdiction of this court.

The record discloses the true status of the controversy to be this:

J. M. Curtice sued Frank F. and Mollie Schmidt in the circuit court of Jackson county, upon a certain taxbill, issued April 29, 1897, by virtue of ordinance 7599, authorizing the paving of Nineteenth street between Tracy avenue and Olive street, said taxbill being issued against lot 58 of Elder's addition to Kansas City, and owned by defendants therein.

The answer of the defendants in that case is, first, a general denial except as otherwise expressly admitted in the special defenses. Second, an admission that the

plaintiff owns the taxbill and defendants own the land. Third, that the taxbill is void because the work was not completed within the time provided by the contract. Fourth, that the taxbill is void because the contract required the contractor to observe the "eight-hour" ordinance of Kansas City. Fifth, that the taxbill is void because the ordinance authorizing the paving of the street specified six kinds of materials that might be used in paving the street, and that the owners of a majority in front feet of the lands fronting the improvement, selected, as they had a right to do, Trinidad Lake asphalt as the material to be used for such paving, it being one of the six materials mentioned in the ordinance from which a selection was to be made. but that the board of public works disregarded the selection of the property-owners, and designated Pittsburg (Kansas) Vitrified Brick Company's vitrified brick as the material to be used. Sixth, that after the said board wrongfully designated such vitrified brick, specifications for work were prepared, and a contract therefor was let, that the contract was confirmed by ordinance of the city, and "that such designation, specifications, contract and ordinances are illegal and void, first, because they are contrary to the Kansas City charter requiring said pavement to be let to the lowest and best bidder; second, because they were unauthorized by the Kansas City charter and in violation thereof in excluding from use in the pavement in question all vitrified brick of similar quality, except Pittsburg (Kansas) Vitrified Brick Company's vitrified brick. Seventh, that prior to the passage of the ordinance authorizing the improvement, the board of public works made a pretended designation of the materials which the property-owners might select from, but that said designation did not comply with the charter of Kansas City, and that the details specified in the said designation of such materials, all specify some particular, special kind of material in such way as to promote monopoly and pre-

vent competition, and that such designation violates the charter of Kansas City, which requires such work to be let to the lowest and best bidder.''

The reply is a general denial with a special plea as follows:

''Further answering plaintiff states that none of the defendants nor any owner of the tract of land described in the petition and in the taxbills therein referred to, nor the owner of any interest therein, did within sixty days from the issue of the said taxbills described in the petition, file with the board of public works of Kansas City, a written statement of each and all objections which he or they had to the validity of such taxbills, the doing of the work mentioned in said taxbills, the furnishing of the materials charged for, the sufficiency of the work or materials therein used, or of any mistake or error in the amount thereof, or a statement of any of the objections of facts alleged in the amended answer, and that by reason of the premises the defendants ought not to be heard to plead or prove all or any of the facts alleged in their amended answer.''

When the case came on for trial, the plaintiff introduced a resolution of the board of public works relating to the issuance of special taxbills, and the special taxbill sued on, and then rested.

The defendants offered in evidence the ordinance authorizing the improvement, and also section 811 of the Revised Ordinances of Kansas City for 1898, regulating the advertising for bids for public work, and requiring the time for the completion of the work to be specified. Thereupon the following proceedings were had:

''By Mr. Scarritt:   We object to the introduction of any evidence on behalf of defendants relative to objections to the taxbills sued on, for the reason that no objections thereto have been stated in writing and filed with the board of public works of Kansas City, by the defendants or any of them or those under whom they claim, within sixty days after the date of the issue of

such taxbills, and especially we object for the same reasons, to any evidence as to the petitions addressed to the board of public works in respect to the material with which the street should be paved and also as to the time consumed in the execution of the work.

"Which objection was by the court overruled, to which ruling of the court plaintiff then duly excepted.

"By Mr. Heitman: It is admitted that no objection whatever to the taxbills sued on was stated and filed with the board of public works of Kansas City within sixty days after the issue of those taxbills."

The court then permitted the defendants to introduce evidence in support of their several defenses, and also heard evidence offered by the plaintiff bearing upon the several defenses.

At the close of the evidence the plaintiff asked the court to declare the law to be as follows:

"1. The court declares the law to be that under the pleadings and the evidence the finding and judgment should be for the plaintiff.

"2. The court finds the facts to be, under the pleadings and admissions of the parties, that none of the defendants nor any owner of the land described in the petition or of any interest therein, did within sixty days after the date of the issue of the taxbill sued on, file with the board of public works of Kansas City a statement of any objections, which he or they had to the validity of the taxbill sued on, the doing of the work mentioned therein, the furnishing of the materials charged for, the sufficiency of the said work or materials therein used, or any mistake or error in the amount thereof.

"3. The court declares the law to be that all the evidence offered and introduced tending to prove that the work of paving Nineteenth street, for which the taxbill sued on was issued, was not completed within ninety days after the contract therefor became binding, is irrelevant and immaterial under the pleadings and

admissions of the parties, and is not considered by the court in determining the issues in this case.

"4.   The court declares the law to be that the contract between Kansas City and Fred Feigel for paving Nineteenth street, in evidence, is a valid contract; that it was confirmed by ordinance of Kansas City, November 21, 1896, and defined and established the rights of the respective parties thereto; and that to hold said contract void, in whole or in part, is to deprive the plaintiff of his property without due process of law and contrary to the terms of the fourteenth amendment to the Constitution of the United States.

"5.   The court declares the law to be that section 23, article 9, of the charter of Kansas City, is constitutional and valid, and is to be taken and considered as incorporated in and forming a part of the ordinance authorizing the improvement in question, and the contract therefor, which are in evidence, as though written into each of them, and that to hold such section void and permit the defendants in this suit to plead or prove any objection or objections to the taxbills sued on, when no such objection or objections have been stated in writing and filed with the board of public works of said city within sixty days from the date of the issue of the taxbill sued on, is to violate the obligation of the said contract and to deprive the plaintiff of his property without due process of law, contrary to section 10, article 1, of the Constitution of the United States, and article 14 of the amendments to the Constitution, and contrary to the provisions of sections 15 and 30, article 2, of the Constitution of Missouri.

"6.   The court finds that the contract for the work in question provides that said work shall be begun within ten days after said contract binds and takes effect, and shall be prosecuted regularly and uninterruptedly thereafter (unless the engineer shall specially direct otherwise in writing), with such force as to secure its full completion within ninety days from the date of its

confirmation, and that within said ten days after said contract bound and took effect the said engineer did specially direct in writing that owing to freezing weather and the lateness of the season the contractor for said work is hereby ordered to cease operations until further notice; that said contractor was not notified by said engineer to proceed with the said work before February 20, 1897, and that the said work was completed on April 23, 1897, and that deducting the period of the suspension of the said work as ordered by the said engineer, the same was completed within ninety days after the confirmation of the contract for said work."

The court gave all of these instructions except the fifth, and refused that. The defendants asked sixteen instructions, covering all the phases of their several defenses, but the court refused them all. The court then entered judgment for the plaintiff, and the defendants appealed. The appeal was allowed to the Kansas City Court of Appeals. The plaintiff moved the court to transfer the case to this court, but the court overruled the motion, proceeded with the case, and reversed the judgment of the circuit court, without remanding the case.

The opinion of the Kansas City Court of Appeals is as follows:

"This is an action to enforce the collection of an installment taxbill issued by Kansas City, dated April 29, 1897, against defendant's land in part payment of the price of constructing a brick pavement on Nineteenth street, from Tracy avenue to Olive street. The improvement was authorized under section 2, article 9, of the Kansas City charter. The judgment was for the plaintiff. In said article provision is made for the paving of streets by the city council passing a resolution declaring it to be necessary and, if no remonstrance from a majority of property-owners is thereafter pre-

Vol 177 mo—6

sented in a designated time, by passing an ordinance directing a contract for the work. And said section also provides as follows: 'Provided further, however, that if the board of public works shall unanimously recommend to the city council that any business street or part thereof be paved . . . and the payment thereof is to be made in special taxbills, and the Common Council shall by ordinance order such work to be done by a vote of two-thirds of the members elect of each house of the Common Council, then such work may be done without any resolution as hereinbefore provided and regardless of such remonstrance. When the work shall be so recommended by the board of public works and so ordered by the Common Council as last above mentioned, the resident owners of the city who own a majority in front feet of the lands belonging to such residents and fronting on such street or part thereof to be improved shall have the right to select the material with which such street . . . or part thereof shall be paved, from not less than two kinds of materials, to be designated by the board of public works. Such selection to be made within ten days after such ordinance shall have taken effect and been published for ten days in the newspaper at the time doing the city printing, which selection shall be by petition addressed and delivered to the board of public works. If such a selection be not made within such time, then the board of public works shall designate the material with which said street . . . or part thereof shall be improved.'

"The said board of public works as so authorized unanimously recommended that the street in controversy be paved as a business street. Said board designated six different kinds of material for such pavement, among which was the following: 'Vitrified brick, as manufactured by the Pittsburg (Kansas) Vitrified Brick Company, on concrete, to be laid according to detail I of brick pavement, approved by said board, August 11, 1896, and on file in the office of the board.'

And also the following: 'Trinidad Lake asphalt on concrete to be laid according to detail (4) of asphalt pavement, approved by said board August 11, 1896, and on file in the office of said board.'

"The ordinance for the paving in controversy was approved September 9, 1896, and publication thereof as required was first made September the 14th, 1896. Appellants claim that a petition of the majority of the resident property-holders was addressed and delivered to the board October 5, 1896, selecting Trinidad Lake asphalt for the pavement. It was denied that said petition was filed within the time required by said charter, which reads: 'Such selection to be made by them [a majority of the resident property-holders] within ten days after such ordinance shall take effect and been published for ten days,' etc. This petition was not filed in time unless we exclude Sunday in computing time, but the law is otherwise. [St. Joseph to use v. Landis, 54 Mo. App. 315; State v. Green, 66 Mo. 631.] The property-owners having failed to exercise their right to select the material for the paving of said street, that duty devolved upon the board of public works which made the following selection: 'Vitrified brick as manufactured by the Pittsburg (Kansas) Vitrified Brick Company.'

"This case is like that of Schoenberg v. Field, 95 Mo. App. 241. The opinion there states the point in issue in the following language, which is precisely the same here: 'The question thus presented is this: had the board of public works the power under the charter to arbitrarily select a paving material that was manufactured by one company to the exclusion of the same material manufactured by other companies? The case shows that vitrified brick as manufactured by the Diamond Brick & Tile Company was not a patented article and was not thus a monopoly by reason of being patented. On the contrary, several other companies, in and near Kansas City, manufactured such brick for

paving which had passed the standard tests for street paving.   The general policy in Kansas City is that in letting public work, opportunity must be given for competition.   The very fact that the work is let on public notice at public bidding discloses this.'   [Sec. 12, art. 17, charter; Galbreath v. Newton, 30 Mo. App. 380; McQuiddy v. Brannock, 70 Mo. App. 535, 548.]

"No good cause has been assigned for overruling said case, and we feel constrained to adhere to it for the sound reasoning upon which it is founded.

"The appellants claim that the ordinance of the city prescribing the number of hours that shall constitute a legal day's work is invalid and has a tendency to stifle competition and thereby increase the cost of public work.   We think not.   The State of Missouri has a law prescribing the number of hours for a legal day's work.   [See sec. 8136, R. S. 1899.]   This statute is founded on public policy.   Other States have a similar statute, and so has the United States.   In St. Louis Quarry & Con. Co. v. Frost, 90 Mo. App. 677, a similar ordinance of the city of St. Louis was upheld.   Many other questions are raised, but as from what has been said the plaintiff was not entitled to recover, they need not be noticed.

"However, the respondent asks that the cause be certified to the Supreme Court because there are constitutional questions involved.   At the close of the trial plaintiff requested the court to declare section 23 of article 9 of the charter of Kansas City valid. The court refused this request.   Said section, amongst other things, provides that, the owner or owners of real estate charged with taxbills 'shall, within sixty days from the date of the issue of the taxbills, file with the board of public works a written statement of each and all objections which he or they may have to the validity of such taxbills  .  .  .   and in any suit on any taxbill issued pursuant to this section, no objection or objections to it shall be pleaded or proved other than those that have

been filed with the board of public works within the period aforesaid.'

"In Richter v. Merrill, 84 Mo. App. 150, it was held that said provision did not apply to a case where the taxbill was void. In Barber Asphalt Co. v. Ridge, 169 Mo. 376, the Supreme Court of Missouri held that said provision was void, as it was 'a violation of the constitutional inhibition against deprivation of private property without due process of law.' But the argument is made here that as said decision was by only one division of the court, plaintiff is entitled to have the question again considered and reviewed by said court. And it was held in State ex rel. v. Kansas City Court of Appeals, 105 Mo. 299, that: 'The decision of this court that the act was constitutional could not have the effect of eliminating from a subsequent case, involving the same question, the jurisdictional fact.' But however that may be, the decision in this case is not based upon the conclusion that said charter provision is unconstitutional, but that it has no application in a suit upon a void taxbill. And this holding was approved in Barber Asphalt Co. v. Ridge, supra.

"It would be a nugatory act to certify this case to the Supreme Court to determine a constitutional question which, when determined, could have no effect on the holding here.

"It is also claimed that defendants raised a question as to the constitutionality of the eight-hour ordinance in controversy, for which the case should also be certified to the Supreme Court. The appellant raises no such question in this court, but he does insist, not that the ordinance is unconstitutional, but that it violates section 12, article 17, of the Kansas City charter. There was no assertion or denial of any constitutional right of plaintiff and as plaintiff has not appealed from a decision against him the plaintiff has in no way been adversely affected. In fact, the decision in the trial court was in his favor. He is not, therefore, entitled

to have the case certified for such reason.   [Ash v. City
of Independence, 145 Mo. 120.]   The plaintiff's appli-
cation to have the case certified to the Supreme Court
is therefore overruled.  For the reasons given, the cause
is reversed.   All concur.   E. J. BROADDUS, J.''

This decision may be epitomized as follows: first,
the defense that the board of public works had no right
to designate vitrified brick because the property-owners
had selected Trinidad Lake asphalt, is decided against
the defendants because they did not file their selection
of material with the board within the time allowed by
the city charter for the property-owners to make a se-
lection; second, the eight-hour provision of the contract
and ordinance is held to be valid, so this point is de-
cided against the defendants and in favor of the plain-
tiff; third, the designation of Pittsburg (Kansas) Vitri-
fied Brick Company's vitrified brick, when such brick is
not covered by a patent, and when other companies in
and near Kansas City manufacture paving brick which
has passed the standard tests for street paving, destroys
competition, and the general policy of Kansas City in
letting public work is that opportunity must be given
for competition.   Hence the taxbill is void.

And the Court of Appeals refused to transfer the
case to this court because that court had decided that the
provisions of section 23 of article 9 of the city charter,
which requires the property-owner to file written ob-
jections to the taxbill, with the board of public works,
within sixty days after the taxbill is issued, do not ap-
ply where the taxbill is void, but apply only where the
objections refer to some error or irregularity in the tax-
bill which may be corrected.  And the return to the
alternative writ proceeds along the same lines.

I.

The crucial question in this case is whether any
court could decide the case of Curtice v. Schmidt in
favor of the defendants without necessarily deciding

that section 23 of article 9 of the charter of Kansas City is unconstitutional.

The validity of the charter provision was brought into the case in this way: The suit is upon a special taxbill, payable in installments. The answer sets up various defenses. The reply denies the right of defendants to interpose any defense of any nature or character, because the defendants are cut off by the said provision of the charter from making any defense, for the reason that they failed to file any written objections to the taxbill within sixty days after it was issued. On the trial, the plaintiff introduced the special taxbill, which under the charter made out a prima facie case, and rested. The defendants then offered evidence in support of their special defenses. The plaintiff objected to the introduction of any evidence on the part of the defendants, because under said charter provision they were not entitled to introduce any evidence, or to make any defense to the taxbill whatever. The trial court overruled the objection, and heard the evidence offered. The plaintiff saved proper exception to this ruling of the trial court. The plaintiff called the trial court's attention to the point again, by asking an instruction declaring the charter provision to be a valid and constitutional enactment, and that it cut off the defendant's right to make any defense whatever. The court refused the instruction. It is claimed now that as the plaintiff saved no exception to this ruling, the point is not in the case, but this is a misapprehension, for the point had been made and ruled against the plaintiff and exception properly saved at the opening of the defendant's case, and the question, therefore, was expressly raised and exception saved. If the judgment had been for the defendants the appeal would clearly have been to this court, for the case would then have been in, practically, the same shape as was the case of Barber Asphalt Paving Co. v. Ridge, 169 Mo. 376, and this court entertained jurisdiction of said case.

In the Ridge case the trial court, on motion of the plaintiff, struck out the special defense, because under the charter the defendants were cut off from making any defense. The defendants claimed in the motion for new trial that the charter provision was unconstitutional. This court held that the charter provision was unconstitutional. But this court only had jurisdiction of that case because the constitutionality of the charter provision was involved. In that case the question of the constitutionality of the charter provision was expressly raised by the motion for a new trial. In this case the charter provision was invoked by the plaintiff and its protection denied to the plaintiff. This could only have been done by holding that the charter provision was unconstitutional. The trial court, however, found that the special defenses of the defendants were not well founded and, therefore, entered a judgment for the plaintiff. The defendants appealed to the Kansas City Court of Appeals. That court held that the defense of monopoly was well taken, and reversed the judgment of the circuit court without remanding the cause, on the ground that the monopoly feature rendered the taxbill and the ordinance, under which the work was done, void, and therefore the plaintiff could never make out a case.

And the Court of Appeals held, as it had held in Richter v. Merrill, 84 Mo. App. 150, that the charter provision did not apply where the taxbill was void, but only applied where the defense rested upon an error or irregularity in the proceedings upon which the taxbill rested and which could have been corrected, and, therefore, refused to transfer the case to this court.

Thus it appears that the trial court denied the plaintiff the benefit of the charter provision because it was unconstitutional, and that the Court of Appeals denied the plaintiff the benefit of the charter provision because it held that it did not apply where the taxbill

State ex rel. v. Smith.

was void, and hence the constitutionality of the charter provision was not involved.

The Kansas City Court of Appeals did decide in Richter v. Merrill, 84 Mo. App. 150, that the charter provision did not apply where the taxbill was void, but only applied where there were errors or irregularities in the taxbill or the proceedings upon which it rested, that might be corrected. And in that case it is said: "Merely as illustrative of this, see Girvin v. Simon, 116 Cal. 610, and authorities cited." The illustrative case, however, is essentially different and the reasons upon which it rests are exactly the converse of those employed by the Kansas City Court of Appeals. The California case arose under a statutory provision in reference to street improvements, which provided that if the property-owner, contractor or any other person interested, felt aggrieved by any act or determination of the street superintendent, or claimed that the work had not been performed according to the contract in a good and substantial manner, or who had any objection to the correctness, or legality of the assessment or other act, determination or proceeding of the superintendent of streets, he should appeal to the city council, within thirty days. Provision is then made for a hearing before the council, and full authority is given to the council to correct all *irregularities and errors,* and the decision of the council is made final and conclusive "*as to all errors and irregularities which the council might have remedied and avoided.*"

It is further provided by the act that no assessment shall be held invalid, except upon appeal to the council, for errors or informalities or other defects prior to the assessment, or in the assessment itself, in cases where notice of intention to do the work has been duly published as by law required, before the passage of the resolution ordering the work to be done.

The Supreme Court of California very properly held that the council had power, on appeal, to correct

errors and irregularities, which might have been remedied or avoided, but had no power under this act to pass on the question whether or not the whole proceeding was void, and, hence, such defense was open to the defendant, without having first appealed to the council. This is plainly right, for no appeal to the council was allowed by the act except as to mere correctable errors or irregularities, and, therefore, the defendant had been provided with no forum outside of the courts in which to contest the inherent invalidity or illegality of the taxbill. The court was also clearly right in holding that the act could not cut off a person's right to contest in the courts, the inherent invalidity of a taxbill, by the mere publication of a notice of intention to do the work. Such provision of the act was properly limited to mere correctable errors or irregularities. A competent forum was provided for the correction of such errors or irregularities, but the attempt of the act to foreclose absolutely all defense upon the more serious grounds of the invalidity of the whole proceeding was manifestly futile, for every man is entitled to a day in some competent court in which to try all questions relating to life, liberty or property. The California court properly held, therefore, that the courts and not the council had jurisdiction to hear and decide all questions that went to the legality or validity of the taxbill; that "a void contract does not become valid by failure to appeal to the board of supervisors. . . . But as to all matters which may lawfully be corrected on appeal to the city council or other governing body of the municipality, and for which an appeal is provided by the statute, the property-owner deeming himself aggrieved must prosecute his appeal, failing in which he is estopped." It will be observed that the court thus upheld the validity of the act, so far as it made it necessary for any one to appeal to a constituted forum on questions affecting correctable errors or irregularities and limited the operation of the act to such cases only,

and held, in effect, the act to be unconstitutional so far as it attempted to foreclose more serious defenses without a judicial inquiry.

This case affords no foundation, however, for the position taken by the Kansas City Court of Appeals in the case of Richter v. Merrill, supra, and in this case, that the charter provision of Kansas City does not apply to an objection that a special taxbill is void, but only applies where the objection goes to an error or irregularity in the taxbill. This idea is evidently borrowed from the California case quoted. But the Court of Appeals overlooked the radical differences between the California act and the provision of the Kansas City charter. When those differences are noted it will at once be apparent that the California case is the exact antithesis of the decisions of the Kansas City Court of Appeals.

Thus, as already pointed out, the California act provided a forum in which questions of error or irregularity in the taxbills could be tried and such matters corrected, but gave that forum no power to pass upon questions going to the fundamental illegality of the taxbills, and sought to foreclose all judicial inquiry as to such grave questions, by publication, in advance, of notice of intention to do the work. The first provision of the act was held to be legal and binding, while the second was held to be unconstitutional, not in so many words, but that is the necessary meaning of the opinion.

Section 23 of article 9 of the Kansas City charter is very different. It is as follows: "Suits may be brought to enforce the payment of such taxbills or any installment or installments thereof, with all interest thereon, in the manner herein provided for the bringing of suits on other taxbills; provided, however, that the owner or owners of any tract or parcel of real estate charged with payment of such bills, or the owner or owners of any interest in such tract or parcel of real

estate shall, within sixty days from date of issue of the taxbills, file with the board of public works a written statement *of each and .all objections* which he or they may have to the *validity of such taxbills, the doing of the work,* the *furnishing of the materials charged for, the sufficiency of .the work or materials therein used and any mistake or error in the amount thereof''* [the italics are superadded to mark the differences between this provision and the California act]; ''and in any suit on any taxbill issued pursuant to this section, no objection or objections to it shall be pleaded or proved other than those that have been filed with the board of public works within the period aforesaid.''

The California act affords a tribunal for the correction of errors and irregularities, and attempts to foreclose all inquiry as to the essentials, the validity of the taxbills. The charter does not take away any person's right to be heard in the courts upon any question, whether of error, irregularity, invalidity, mistake, or of any kind whatever, but requires that as a prerequisite to such right to be heard, a party must file his objections with the board of public works, within sixty days after the taxbill is issued.

The distinction drawn by the California court between a void and an irregular or erroneous taxbill was a proper distinction under the act, for the act itself drew such a distinction.

But there is no foundation whatever for such a distinction under the charter provision, for that provision expressly applies to objections which go to, first, the *validity* of the taxbills; second, to the doing of the work; third, to the materials furnished; fourth, to the sufficiency of the work or materials used; fifth, to any mistake or error in the amount.

The Kansas City Court of Appeals evidently adopted the distinction drawn by the California court between irregular and void taxbills, which was a proper distinction under their law, without noticing the differ-

ences between the California law and the charter of Kansas City. Otherwise the Court of Appeals could not have fallen into the error of saying that the charter did not apply to void taxbills, when the charter provision requires the objection to the *validity* of the taxbill to be filed as well as all objections to other essentials and irregularities.

The charter requires a party to file all of his objections to the taxbill, whether they go to show that the taxbill is void or only irregular or erroneous, and cuts off all right to plead or defend on any ground not specified in the objections filed. No distinction is made in the charter between the character or nature of the objections or of the defenses. All objections are required to be filed, and the courts pass on all kinds of objections.

This being true, no court has a right, by construction, to change the plain provisions of the charter. No court can construe away the express requirement of the charter that all objections to the validity of the taxbill must be filed. No court has a right to differentiate between objections that go to show that the taxbill is void, and objections that go to show that it is erroneous or irregular. The charter makes no such distinction, and the courts can not do so.

The provision of the charter is either wholly good or wholly bad. It can not be held good as to errors or irregularities, and bad as to essentials. It can not be distinguished so as to apply to errors or irregularities, and not apply as to objections going to the validity of the taxbill.

If the charter provision is a valid provision, the defendants in this case are not entitled to make any defense of any kind whatever, for they did not comply with the requirements of the charter. Or, otherwise stated, the defendants can only be heard to defend this case for any reason, on the ground that the charter provision is invalid because it is unconstitutional, because

it deprives a party of his day in court, and therefore is not due process of law.

This case, therefore, can not be decided in favor of the defendants, without first deciding that the charter provision is unconstitutional, and the Kansas City Court of Appeals has no power to decide that question—the appellate jurisdiction to decide that constitutional question being vested solely in this court.

In State ex rel. v. Smith, 152 Mo. 444, this court, per VALLIANT, J., held that a constitutional question is necessarily involved, whenever the conclusion reached could only be arrived at after construction of the Constitution.

In State ex rel. v. Smith, 141 Mo. 1, this court, per BARCLAY, J., held that: "When the judgment of a court, on agreed facts, obviously and necessarily comprehends a decision on a question of constitutional right, that question is 'involved' in the judgment. [Kaukauna Co. v. Green Bay, etc., Co., 142 U. S. 254.]"

In Kirkwood v. Meramec Highlands Co., 160 Mo. l. c. 118, BURGESS, J., said: "To confer upon the Supreme Court jurisdiction upon an appeal from the circuit court upon the ground that a constitutional question is involved, it must appear that the decision is necessary to the determination of the case," etc.

In the Federal case cited, the Supreme Court of the United States, speaking through Justice BROWN, said:

"Notwithstanding the inhibition of the Constitution is not distinctly put in issue by the pleadings, nor directly passed upon in the opinion of the court, it is evident that the court could not have reached a conclusion adverse to the defendant company without holding, either that none of its property had been taken, or that it was not entitled to compensation therefor, which is equivalent to saying that it had not been deprived of its property without due process of law. This court has had frequent occasion to hold that it is not always necessary that the Federal question should appear affirma-

tively on the record, or in the opinion, if an adjudication of such question were necessarily involved in the disposition of the case by the State court. [Wilson v. Black Bird Creek Marsh Co., 27 U. S. (2 Pet.) 245; Armstrong v. Athens County, 41 U. S. (16 Pet.) 281; Chicago L. Ins. Co. v. Needles, 113 U. S. 574; Eureka Lake and Y. Canal Co. v. Yuba County Super. Ct., 116 U. S. 410.]"

This doctrine rests upon quite a different principle from that announced in Ash v. City of Independence, 145 Mo. 120. The rule there laid down applies to cases which can be decided without in any manner infringing upon or construing the Constitution, but where a litigant may or may not, as he chooses, inject a constitutional question in the case, which does not necessarily present itself. While cases like these just cited apply to cases where no such judgment as was rendered could possibly be rendered without meeting at the threshold of the investigation a constitutional question and deciding it against the party losing in that court.

This case is an apt illustration of the latter rule. Here the trial court decided the constitutional question against the plaintiff, but gave judgment in his favor. He had no cause of complaint as to the result of the whole case, therefore. It was possible for the court to thus decide the constitutional question against the plaintiff without cutting off the plaintiff's right to recover, for the plaintiff might still recover on the merits. But it was not possible to decide the constitutional question in favor of the plaintiff and then give judgment for the defendant, for if the constitutional question was decided in favor of the plaintiff it cut out the defendant's right to defend the case at all, and therefore cut off his right to a judgment.

In other words, in order to decide in favor of the defendants in this case, or even to permit them to introduce any evidence in support of their answer, the court would have first to decide that the charter provision,

invoked by the plaintiff is invalid, and it could only be invalid because it is unconstitutional. Hence, it is absolutely necessary to consider and decide the constitutional question before any defense of the defendants can even be considered. A constitutional question is therefore necessarily involved in this case and necessarily stands in the defendant's pathway to a judgment. The Kansas City Court of Appeals has no jurisdiction to decide that question.

The case of Hilgert v. Paving Co., 173 Mo. 319, lays down no rule inconsistent with what is here said.

But the defendants invoke the rule of practice of the Supreme Court of the United States announced in New Orleans Water Works v. Louisiana, 185 U. S. 336, and Equitable Life Ins. Co. v. Brown, 23 Sup. Court Rep. 123, that when the constitutional question raised or necessarily involved has been explicitly decided in another case, it will not be regarded as properly in a subsequent case.

This practice in this court is exactly the reverse. In State ex rel. Dugan v. Court of Appeals, 105 Mo. 299, the constitutionality of the Local Option laws was challenged, and it was contended that their constitutionality had been decided by this court, and therefore the attempt to again raise that question was a mere pretense and a sham. But this court, per MACFARLANE, J., said: "The decision of this court that the act was constitutional could not have the effect of eliminating from a subsequent case, involving the same question, the jurisdictional fact. The subject-matter, that is, the question to be decided, and not the result of the decision, gives the jurisdiction. The subject-matter of the suit attaches itself to the case the moment it is directly raised in the circuit court, and continues with the case, and is a part of it, unless subsequently withdrawn, until the case is finally determined. If an appeal is taken the jurisdic-

tion is indelibly stamped upon the case, and can not be expunged by previous decisions of the court upon the same question.''

The same contention was made in State ex rel. v. Smith, 150 Mo. l. c. 81, and this court, per BURGESS, J., reached the same conclusion as was reached by MAC-FARLANE, J., in the case quoted from.

The same rule was announced by this court in Brown v. Railroad, 175 Mo. 185.

The fact, therefore, that in Barber Asphalt Paving Co. v. Ridge, 169 Mo. 376, this court held the provision of the Kansas City charter to be unconstitutional, does not take the question out of this case, and does not confer jurisdiction upon the Kansas City Court of Appeals. This court alone has jurisdiction to decide that question. The case of Curtice v. Schmidt could not be decided in favor of the defendants without first holding that the charter provision invoked by the plaintiff is unconstitutional, and therefore a constitutional question is necessarily involved in that case and this court, and not the Kansas City Court of Appeals, has jurisdiction.

The alternative writ of mandamus will therefore be made peremptory, commanding the respondents, as judges of the Kansas City Court of Appeals, to certify and transfer to this court the case of J. M. Curtice v. Frank F. Schmidt and Mollie Schmidt, for adjudication by this court.   All concur.