STATE OF MISSOURI, at the relation of JAMES E. SMITH, Appellants, v. THOMAS K. BOWMAN, Mayor, Respondent.

Springfield Court of Appeals, November 5, 1914.

1. MUNICIPAL CORPORATIONS: Officers: Elective: Appointive: Distinction. An elective officer of a city is one where the officer is chosen by vote of the qualified voters of the city. An appointive officer is one where the officer is appointed by the mayor or council of the city. In a city of the third class a city clerk is an appointive officer. (Section 9143, R. S. 1909.)

2. ————: ————:.Filling Two Offices: Public Policy. When the power and duty to select a city clerk is vested in the city council, such council cannot select and appoint one of its own number to that office as it would be against public policy to do so.

3. PUBLIC POLICY: Term Defined: Comprehensiveness. The term "public policy" defined and its comprehensiveness explained.

4. ————: What is: How Determined. In determining what is or is not against public policy in this State the court will consider the common law and the decisions of other States on similar questions.

5. MUNICIPAL CORPORATIONS: Officers: Cannot Fill Two Offices at Same Time. No person shall at the same time fill two municipal offices, either in the same or different municipalities. (Sec. 18, Art. 9, Constitution.)

Appeal from Greene County Circuit Court.—*Hon. B. G. Thurman*, Special Judge.

AFFIRMED.

*Neville & Gorman* and *Barbour & McDavid* for appellant.

(1) The question of holding incompatible offices cannot arise in this case, for if holding the office of city clerk is incompatible with that of councilman, by accepting and entering upon the duties of city clerk

the relator thereby forfeits the office of councilman and it at once becomes vacant by operation of law, and relator could not hold both even if he wanted to. State ex rel. v. Bus, 135 Mo. 325; State ex rel. v. Draper, 45 Mo. 355; State ex rel. v. Lusk, 48 Mo. 242; People v. Carrigue, 2 Hill 93 (15 N. Y. Com. Law 296). The city council had a perfect right to elect the relator, one of its own members, city clerk. The duties of the city clerk are all purely ministerial. His term of office and his annual salary are both definitely fixed, and, under the charter and our Constitution, his salary cannot be changed during the term for which he has been elected. There is no law in this State against such selection being made by the council. State v. Fowler, 66 Conn. 298 (32 Atl. 162); State ex rel. v. Meyer, 60 Ind. 288; State v. Clendenin, 24 Ark. 78; State v. Board of Education, 23 Atl. 670 (N. J.); Gaw et al. v. Ashley, 80 N. E. 790 (Mass.) and cases under 3. (3) The public policy of the State of Missouri must be determined by its Constitution, laws and judicial decisions; not by the varying opinions of laymen, lawyers, or judges as to the de mands of the interests of the public. Insurance Co. v. Railroad, 70 Fed. 201; Insurance Co. v. Railroad, 175 U. S. 91; U. S. v. Freight Assn., 58 Fed. 58; Railroad v. Blunt, 155 Fed. 497; Swann v. Swann, 21 Fed. 300; Daniels v. Benedict, 97 Fed. 367; Smith v. Du Bois, 6 Am. St. 260; State ex rel. v. Meyer, 60 Ind. 288; People v. Hawkins, 157 N. Y. 1; Longmuir v. Landes, 113 Ill. App. 138; Raisor v. Railroad, 117 Ill. App. 497; State v. Coyle, 122 Pac. 254.

*T. M. Scawell, E. P. Mann* and *J. T. White* for respondent.

An officer cannot use his official appointing power to place himself in office and therefore where certain officers are vested with the power to fill a position

of trust and remuneration, they cannot fill it with one of their own number. It is contrary to the policy of the law, and that is true even where there is no statutory inhibition. This is a rule of common law. 29 Cyc. Law & Pro., sec. 1381; 23 Am. & Eng. Ency. of Law, 338; Meglemeyer v. Weissinger, 131 S. W. 40, 31 L. N. S. 575, notes; Smith v. City of Albany, 61 N. Y. 444; Gaw v. Ashley, 80 N. E. 790; People v. Thomas, 33 Barb. 287; State v. Hoyt, 2 Ore. 246; State ex rel. v. Taylor, 12 Ohio St. 135; Woods v. Potter, 95 Pac. 1125; Flowers v. Logan Co., 137 Am. St. 353; Kinyon v. Duchene, 21 Mich. 497; Commonwealth v. Douglas, 1 Binney 77; Sublett v. Bedwell, 12 Am. St. 338; Ellis v. Lennon, 54 N. J. L. 468. The general rule applies to officers with power to appoint; they cannot appoint themselves. 23 Am. & Eng. Ency. of Law, p. 338; Meglemeyer v. Weissinger, 131 S. W. 40.

STURGIS, J.—This is a proceeding to determine relator's right to hold the office of city clerk of Springfield, Missouri. The defendant, mayor of said city, declined to approve his bond or issue him a certificate of election and this proceeding asks the court to compel the defendant to do so. The facts are not disputed. Springfield is a city of the third class. It is agreed that appellant possesses the qualifications necessary for a city clerk, barring the fact of his being a member of the city council of said city at the time of his alleged election or appointment, and that he tendered a good and sufficient bond. The defendant mayor bases his refusal on the ground that relator has not been legally elected or appointed and could not be lawfully elected or appointed to the office for the reason just stated.

The common council of said city consists of sixteen members, two from each of the eight wards. The relator is one of such number, duly elected and

actively representing one of the wards of such city. When the time came to elect or appoint a clerk for said city in June, 1914, the city council, relator sitting as a member, proceeded to choose a clerk and on a roll call the relator received nine votes, counting his own, and seven votes were cast for another candidate. The mayor rules that relator's vote for himself could not be counted, thus giving relator eight votes, and, as there is a city ordinance requiring a majority of all the members of the city council to select a clerk, declared that no one was selected.

The question of relator's right to vote for himself, and, should that be ruled against him, the validity of the city ordinance requiring an affirmative vote of a majority of all the members elected to the council to choose a clerk, are both presented for our consideration by elaborate and able briefs. The proper method of selecting a city clerk under the present charter of cities of the third class as enacted in 1893, Acts of 1893, p. 66, now embodied in the Revised Statutes, whether by appointment by the mayor with the approval of the city council under a general ordinance of the city relating to appointive offices, or by an election by the city council as was attempted to be done in this case, is also called in question. It is not wise to decide too many grave questions in one case unless necessary to a decision thereof and the view we take of another question duly presented makes it unnecessary to pass on the matters just suggested. We might say, however, that there can be no question but that the office of city clerk is an appointive one rather than an elective office. An elective office is one where the officer is chosen by vote of the qualified voters of the city and the office is an appointive one whether the appointment be made by the mayor or by the city council.

The defendant contends, and in this we agree as did the learned trial judge, that, granting that the

power and duty to select a city clerk is vested in the
city council, then such council could not select and
appoint one of its own number to that office. This is
true because such exercise of the appointive power
is against public policy..

The term public policy is one of broad signifi-
cance and cannot be comprehensively defined in
specific terms. One of the best definitions perhaps
is that of Justice STORY, which applied the term to
that which "conflicts with the morals of the time, and
contravenes any established interest of society." [1
Story on Const., 675.] This definition is quoted by
Judge SHERWOOD in Kitchen v. Greenabaum et al., 61
Mo. 110, 115, in which the court was considering the
enforcement of. a right to a prize drawn on a lottery
ticket. An excellent definition is also found in Black's
Law Dictionary, where it is said: "The term 'policy'
as applied to a statute, regulation, rule of law, course
of action, or the like, refers to its probable effect,
tendency, or object, considered with reference to the
social or political well-being of the State. Thus, cer-
tain classes of acts are said to be 'against public
policy,' when the law refuses to enforce or recognize
them, on the ground that they have a mischievous
tendency, so as to be injurious to the interests of the
State, apart from illegality or immorality." If one
will read the various definitions of this term collected
in 6 Words & Phrases, 5813, he will get a good work-
ing definition in his mind, though he may not be able
to formulate the same in words.

The relator quotes from Judge SANBORN in Ins.
Co. v. Chicago, M. & St. P. Ry. Co., 70 Fed. 201, that:
"The public policy of a State or Nation must be de-
termined by its constitution, laws, and judicial de-
cisions; not by the varying opinions of laymen, law-
yers or judges, as to the demands of the interests
of the public." To this we readily agree, but we
cannot assent to relator's construction of this lan-

guage to the effect that, as there is no positive statute or constitutional provision and no judicial decision of any appellate court of this State explicitly prohibiting a city council from appointing one of its own members city clerk, then such act is not against the public policy of this State. This narrow construction would defeat and destroy the whole meaning and working force of the term public policy. If there be a positive statute or constitutional provision prohibiting such action, then there is no function for public policy to perform; and, as to judicial decisions, there must be a *first* one in each jurisdiction as applied to any concrete case. What Judge SANBORN evidently means is that in arriving at what is or is not against public policy, the underlying principles of the constitution, laws and judicial decisions, as showing the settled will of the people as an organized body, are to be looked to rather than the varying individual opinions of laymen, lawyers or judges.

It is said, in Billingsley v. Clelland, 41 W. Va. 234, 244, 23 S. E. 812, in speaking of the term "public policy": "This term is equivalent to 'the policy of the law.' It is applicable to the spirit as well as the letter." It is plain from a reading of the many concrete cases that transactions are held to be against public policy because against the policy of the law, that is, against the manifest object and trend of the whole law on that subject rather than against a specific enactment prohibiting it. Many cases will be found denouncing acts or agreements as contrary to public policy when no specific statute or constitutional provision prohibits the same. Thus it is held in Keating v. Hyde, 23 Mo. App. 555, 560, that the act or agreement of one person "to work for" another for hire to secure the latter's *nomination* to office is against public policy, although the only then statutory enactment forbid such acts only in securing the *election* of another to office. The court said: "The stat-

ute last quoted is sufficient for our conclusion, since it clearly indicates the policy of the State. Argument may be offered to show that the contract or agreement between the parties in this case was not within the literal terms of the statutory prohibitions. But the question is not whether a conviction could be had, under the statute, upon the facts disclosed by this record. The only question here is, whether the agreement itself was void, as contrary to public policy? A nomination as the exclusive candidate of a great political party for any public office, is one of the most important features of the machinery which is to work out the ultimate result. . . . It is, therefore, no less a matter of public concern that purity of suffrage shall prevail in the selection of the party candidate, than in the ultimate choice of the officers.'' In Ashbrook v. Dale, 27 Mo. App. 649, Judge ROMBAUER, in discussing the enforcement of a contract to rent property for a bawdyhouse, where the only statute specifically declaring such contracts void had been held not applicable to St. Louis, where the property was situated, said: "The answer simply claims the illegality of the transaction. A bawdyhouse is a common nuisance *per se,* and to conduct such a place or lease property for such a purpose is a public wrong. [Givens v. Van Studdiford, 86 Mo. 156.] The fact that the statute above referred to has no application to the city of St. Louis, cannot render that lawful which is unlawful irrespective of the statute." In Harrington's Adm'r v. Crawford, 136 Mo. 467, 471, 38 S. W. 80, it is said: "The authorities from the earliest date are uniform in holding that a contract to indemnify a sheriff or other ministerial officer from omitting to do that which he ought to do, is void as against public policy." In State v. Williamson, 118 Mo. 146, 151, 23 S. W. 1054, it is held that under the common law of England, as well as by the decisions of many of the States, it is against public policy to

allow a public officer to sell or assign the future salary of his office, and the court had no hesitancy in adopting that rule in this State, saying: "The reason of the rule is that the public service may not be so good and efficient when the unearned salary has been assigned as when it has not been, and 'that the public service is protected by protecting those engaged in the performance of public duties.' " In Horstman v. Adamson, 101 Mo. App. 119, 74 S. W. 398, the court declined to enforce a contract by which a public officer agreed to hire and keep a deputy for the entire period of his office, as it is against public policy not to allow him entire freedom to dismiss the deputy at any time.

And so, without encumbering this opinion with a citation of numerous cases, it has been held that a provision of a will giving a legacy on condition that a wife shall not live with her husband, or a child with its parents, is against public policy and void; and so is any contract attempting to limit the liability of a common carrier for its own negligence; so is a contract in restraint of marriage, or to facilitate a divorce. The policy of the law is to favor fair and honest dealings, and so it is held against public policy to allow an agent of one party to a deal to secretly act as agent for the other also. It is against public policy for an officer to receive extra compensation for the performance of his official duty or to indemnify himself against a nonperformance of such duty.

These and numerous other decisions show that, in determining what is or is not against public policy, we may and should go to the common law and to the decisions of other States, as well as our own, the same as in determining any other rule of substantive law. We are also to consult the constitution and statutes of our State on kindred and cognate subjects.

Tested in this manner, we have no hesitancy in holding that it is against public policy to allow a body of public officials having the appointive power to fill

an office to appoint one of their own number to such office. Thus, in 29 Cyc. 1381, the law is stated: "It is contrary to the policy of the law for an officer to use his official appointing power to place himself in office, so that, even in the absence of a statutory inhibition, all officers who have the appointing power are disqualified for appointment to the offices to which they may appoint. The Constitutions of a number of the States have applied the same rule to the offices which have been created or whose emoluments have been increased by the bodies of which the persons seeking appointment were members at the time the office was created, or the emoluments increased." In 23 Ency. of Law, 338, after stating that it has often been enacted that members of legislative bodies are ineligible to offices created by such bodies, the text adds: "The same rule applies to officers with the power of appointment. They cannot appoint themselves." In Woods v. Potter, (Cal.) 95 Pac. 1125, 1127, the court said: "Members of city councils occupy a position of trust, and are bound to the same measure of good faith towards their constituents that a trustee is to his *cestui que* trust. [Andrews v. Pratt, 44 Cal. 309.] The mere fact that a member of such a body acts as such in connection with any matter in which he is interested vitiates the transaction. [Finch v. Riverside, 87 Cal. 597, 25 Pac. 765.] It will be presumed that under such circumstances self-interest prevents the individual member from protecting the rights of the public against his own."

A great statesman has voiced the basic principles governing official conduct by declaring that: "A public office is a public trust." Like a trustee, such officer must not use the funds or powers entrusted to his care for his own private gain or advancement. To allow him to do otherwise is against public policy. It is of the utmost importance that every one accepting a public office should devote his time and ability

to the discharge of the duties pertaining thereto without expectation of personal reward or profit other than the salary fixed at the time of accepting the same; and that he should do so, except for a most weighty reason, to the end of his term. Certainly the trend and policy of our law in this respect is to remove from public officials, so far as possible, all temptation to use that official power, directly or indirectly, to increase the emoluments of such office; and so they are forbidden to become interested in contracts let by them, or to have their salaries increased or decreased, or to accept offices created by themselves.

It is pointed out that while the city council, of which relator is a member, has the power to, and in this particular instance did, fix the salary of the city clerk, to which position relator now aspires, a short time before his alleged selection as clerk, that, as a matter of fact, the salary was decreased rather than increased. This fact is denied and it may be difficult to determine, as the salary was previously dependent, to some extent, on the fees collected, while now it is fixed. But that is not important. The policy of the law is to prevent even the possibility of that being done. So also, it is truly said that there is no evidence that relator entered into any alliance or combination with his fellow members of the city council to secure his election as clerk, or that any member of the council voted for him for any reason other than a desire to select the most competent man available for the position; but, it cannot be denied that a combination might be thus formed, so as to select one councilman as clerk, another as street commissioner, another as city engineer, etc., until the entire body of appointive offices is made up of members of the appointing body. This possibility is one of the reasons for holding such appointments against public policy. Other reasons might be given, but it is sufficient to say, and we so hold, that it is against the

policy of the law to allow a member of the appointing body, in a case like this, where the appointive office is a lucrative one, to become the beneficiary of the appointment. As the case is presented to us, the relator is asking a commission to be issued to him as city clerk and his bond approved, thus opening the door for him to step into that office while he is yet holding the office of councilman. Section 18 of article 9, of our Constitution, provides that: "No person shall at the same time fill two municipal offices either in the same or different municipalities." It is stated that relator intends to resign his office as councilman before entering upon the duties of the office of city clerk but no resignation is yet tendered. If this constitutional provision does not absolutely prohibit our granting the relief prayed for, it certainly indicates the public policy of this State on the question we are now discussing. The fact of creating a vacancy and the abandonment by relator of the important office to which he was elected might be considered a potent reason for our present ruling.

We are not without abundant authority for this ruling. The case of Meglemery v. Weissinger, (Ky.) 131 S. W. 40, 31 L. R. A. (N. S.) 575, is a leading case on this subject. The editorial note to that case says: "The adjudged cases upon the validity of appointment to office made from the membership of the appointing body hold uniformly that such appointments are illegal and to be generally discountenanced." In that case it was held that the fiscal court of a county, empowered to appoint a bridge commissioner, a salaried officer, could not appoint one of their own number. No specific statute or constitutional provision is cited as prohibiting such action. The court held the appointment void as against public policy, and said: "Nor does the fact that his term expired within a few days after his appointment, or the fact that his duties would be prescribed and his compensation al-

lowed by a body of which he was not a member, or the fact that he was not present with the court when his appointment was made, have the effect of changing this salutary rule. The fact that the power to fix and regulate the duties and compensation of the appointee is lodged in the body of which he is a member is one, but not the only, reason why it is against public policy to permit such a body charged with the performance of public duties to appoint one of its members to an office or place of trust and responsibility. It is of the highest importance that municipal and other bodies of public servants should be free from every kind of personal influence in making appointments that carry with them services to which the public are entitled and compensation that the public must pay. And this freedom cannot in its full and fair sense be secured when the appointee is a member of the body and has the close opportunity his association and relations afford to place the other members under obligations that they may feel obliged to repay." Other cases to the same effect will be found, giving the same and other reasons for so holding. [Smith v. City of Albany, 61 N. Y. 444; Gaw et al. v. Ashley et al., (Mass.) 80 N. E. 790; The People v. Thomas, 33 Barbour's Repts. 287; Ohio ex rel. v. Taylor, 12 Ohio St. 130; Kinyon v. Duchene, 21 Mich. 497.]

Holding, as we do, that the relator could not be appointed to the office of city clerk, the judgment of the trial court will be affirmed.

*Robertson, P. J.,* concurs in the result and files a separate opinion.

*Farrington, J.,* concurs.

## CONCURRING OPINION.

ROBERTSON, P. J.—The appellant in this case, while a member of the city council, claims to have been elected city clerk. This action is prosecuted and submitted here on the theory that he has the right to hold both offices at the same time.

By reason of the constitutional provision quoted in the majority opinion he was disqualified from holding this office, and, therefore could not be legally elected. The fact that there was no constitutional question invoked in the trial court, or here, by the parties does not prevent the application of such a provision as this, since it goes to "the very vitals of the case." [Wabash Railroad Co. v. Flannigan, 218 Mo. 566, 569, 117 S. W. 722.] However, if I am right, this court yet has jurisdiction, as the majority opinion is not based on a construction of the Constitution (State ex rel. v. Smith, 173 Mo. 398, 73 S. W. 211), as I think an opinion in this case should be (State ex rel. v. Smith, 177 Mo. 69, 75 S. W. 625), but I concur in the result.