## NASH v. CRAIG, *Appellant.*

### Division One, May 26, 1896.

1. **Election Contest:** NOTICES: AMENDMENT: STATUTE. The notices served by the respective parties constitute the only pleadings in an election contest case; and where the court has acquired jurisdiction from the filing of the contestant's notice within twenty days after the votes have been officially counted as required by Revised Statutes, 1889, section 4706, it may permit an amendment to the original notice making more specific the grounds of contest, under section 2098, which provides that in furtherance of justice a pleading may be amended "by inserting other allegations material to the case."

2. ——: ——: ——: ——. *Semble* that under said section 2098 such election contest notices may be amended as in case of ordinary pleadings in civil causes.

3. ——: RECOUNT: CLERK: ASSISTANT. The duties imposed under Revised Statutes, 1889, section 4721, *et seq.*, upon the county clerk in an election contest case, to open, count, compare, etc., the ballots and to certify the result to the court, are merely ministerial, and if performed under the supervision of the clerk, may be performed by an assistant the clerk may select.

4. ——: ——: ——: STENOGRAPHER. The county clerk may, too, in noting the objection of the parties to the ballots, employ a stenographer.

5. ——: ——: ESTOPPEL. Where there were several contests of county officers and it was agreed that one examination and count of the ballots should answer for all, a party to the contest who made no objection to the presence of all the contestants and contestees could not, after the recount had been made, successfully move to quash the return of the clerk because he did not exclude from his office, while the ballots were being opened and examined, all the persons except the contestant and contestee, as required by section 4723.

6. **Practice:** ELECTION CONTEST: EVIDENCE: FINDING OF TRIAL COURT. On the issue of whether the ballots counted by the clerk and certified to the court in an election contest, were identical with those voted and counted by the election officers, the finding of the court is conclusive where there is evidence to support it.

7. ——: ——: CLERK'S CERTIFICATE: RECOUNT BASIS OF COURT'S ACTION. Under Revised Statutes, 1889, section 4726, making the clerk's certificate, after a recount by him, *prima facie* evidence of the facts therein stated, such recount constitutes the basis on which the court is to act.

*Appeal from Buchanan Circuit Court.*—HON. A. M. WOODSON, Judge.

AFFIRMED.

*K. B. Randolph* and *Brown & Pratt* for appellant.

(1) The court erred in overruling the motion of contestee to strike out the amended notice of contest filed by the contestor, and also erred in overruling the objection made by contestee to the introduction of any testimony under the amended notice of contestor. The election was held November 6, 1894. The original notice of contest was served by contestor on contestee November 27, 1894. Contestee then served his notice on contestor on the thirty-first day of December, 1894. Circuit court convened January 7, 1895, on which day contestor served on contestee his amended notice of contest. This was sixty days after the election, and the said notice under the law should have been stricken out. Laws, 1893, page 156, provides that "no election of any county or township officers shall be contested unless notice of such contest be given to the opposite party within twenty days after the votes shall have been officially counted. The notice shall specify the grounds upon which the contestant intends to rely, and if any objection be made to the qualifications of any voters the names of such voters and the objection shall be stated therein." *Bowen v. Hixon*, 45 Mo. 344; *Castello v. Circuit Court*, 28 Mo. 259; *Wilson v. Lucas*, 43 Mo. 290; *Applegate v. Eagan*, 74 Mo. 258; *Sone v. Williams*, 130 Mo. 530. (2) The filing of the amended notice constituted an abandonment of the original notice and contestor stood at the time of the trial without any notice of contest whatever. *Roberts v. Insurance Co.*, 26 Mo. App. 92. (3) Courts of general jurisdiction

when engaged in the exercise of special and limited, or statutory powers are confined strictly to the authority given and jurisdiction must appear upon the face of their entire proceedings. McQuillin's Pleading and Practice, sec. 140; *City of Kansas v. Ford*, 99 Mo. 91. (4) The contestor's original notice of contest was fatally defective because it does not state when the votes were officially counted, or that they ever were officially counted, and was served twenty-one days after the date of the election. This matter is jurisdictional and should appear on the face of the notice. (5) The finding of the court upon the facts was erroneous. The burden was on the contestant to show that the ballots have been preserved in the manner required by statute, and this he failed to do. See *Sone v. Williams*, 130 Mo. 530; also, R. S. 1889, sec. 4672. (6) The trial court erred in sanctioning the recount of the ballots made by the deputy of the county court appointed for that purpose. The recount should have been made by the county clerk himself. If discretion and judgment are to be exercised either as to the time, manner, or feasibility of the exercise of an official function, the body or officer intrusted with the duty to decide must exercise it, and can not delegate it to any other officer, body, or person. *Thompson v. Boonville*, 61 Mo. 282; *Shechan v. Gleeson*, 46 Mo. 100; *Potts v. Henderson*, 2 Ind. 327; *Ruggles v. Collier*, 43 Mo. 353; *City to use v. Clements*, 43 Mo. 395.

*Hall & Woodson, Huston & Parrish, Casteel & Haynes*, and *J. W. Boyd* for respondent.

(1) The trial court did not err in permitting contestant to file the amended notice. McCrary on Elections [3 Ed.], sec. 406; *Election Case*, 65 Pa. St. 20. The public interests imperatively require that the ulti-

mate determination of the contest should in every interest if possible reach the very right of the case. *Minor v. Kidder*, 43 Cal. 229; *Dobyns v. Weadon*, 50 Ind. 298. (2) The duty of the county clerk in making the recount is simply ministerial. *State ex rel. v. Garnesche*, 65 Mo. 480; *State v. Lafayette Co. Ct.*, 41 Mo. 224; *State v. Williams*, 95 Mo. 159. Such duty being ministerial could be performed by a temporary deputy employed by the clerk for that purpose and the clerk could legally certify the result. See *St. Louis v. Oeters*, 36 Mo. 463; *Kefferstein v. Knox*, 56 Mo. 186; *City v. Morris*, 43 Mo. App. 586. (3) Upon the hearing of the motion to quash, a large amount of testimony was taken—the evidence tended strongly to sustain the certificate of the clerk. The court, in passing upon this motion, was obliged to pass upon the weight of the testimony and the credibility of the witnesses, and the overruling of the motion was a finding of the facts against the appellant's contention, and in such case the court will not interfere. *State v. Bank*, 80 Mo. 626; *McCarthy v. Railroad*, 92 Mo. 536; *Coppersmith v. Railroad*, 51 Mo. App. 365. (4) The trial court in its finding of facts found "that the ballots had not been tampered with in any manner, at any time, or at any place—that all of the election judges, clerks, and messengers who returned the poll books, registration books and ballots, acted in the utmost good faith so far as the evidence shows, and there is no evidence to the contrary." The evidence abundantly supports this finding and it is conclusive on this court. *Sone v. Williams*, 32 S. W. Rep. (Mo.) 1016; *Lankford v. Gebhard*, 32 S. W. Rep. (Mo.) 1127; *Murphy v. Battle*, 155 Ill. 182.

MACFARLANE, J.—This is an election contest over the office of clerk of the county court of Buchanan

county.   The parties were opposing candidates for said
office at the election held on the sixth day of Novem-
ber, 1894.   According to the official canvass of the vote
by the election officers, completed on the tenth of
said month, Craig received five thousand, six hundred
and sixty and Nash five thousand, six hundred and
fifty-nine votes.   Craig received a certificate of elec-
tion.   On the twenty-seventh of November, 1894, Nash
served Craig with a notice of contest specifying the
grounds upon which he would rely.

On the twenty-eighth day of December, 1894,
Nash applied to the clerk of the circuit court of said
county for an order upon the county clerk to open,
count, compare with list of voters and examine the
ballots.   The order was made and the fifth day of
December was fixed as the time for beginning such
examination and count.

It appears that there was a contest also over the
election of most of the other county officers.   An order
for a recount was made in each case and the same day
fixed for the hearing.   All the contestants and their
attorneys appeared and one examination was made to
answer the purpose of all.   A stenographer of the
county clerk was also present and a special deputy was
brought in by the clerk to assist in the examination
and recount.

According to the examination and count of the
clerk, which was concluded on the twenty-fourth of
December, 1894, Nash received five thousand, eight
hundred and twenty-seven and Craig five thousand,
seven hundred and fifty-two votes.

On the thirty-first day of December, 1894, Craig
served upon Nash a counter notice of contest giving
the grounds upon which he would rely.

At the January term of the circuit court, 1895,
contestee, Craig, filed a motion to quash the return or

report of the county clerk. The chief grounds of this motion were, that the examination and count were made principally by a deputy clerk and by a clerk employed especially to assist in the work; and that other persons than contestant, contestee, and their attorneys were permitted to be present during the examination. The motion was overruled and contestant excepted.

At said term of court, and on the seventh day of January, 1895, there was served upon contestee an amended notice of contest. This amended notice was in substance the same as the original, but gave more explicitly the grounds of contest.

A motion of contestee to strike out this amended notice, on the ground that it was not authorized, was overruled by the court and contestee excepted.

The case was called for trial on the twenty-first day of January, 1895, and on that day contestee filed a motion for a continuance, which was overruled and he saved no exception.

On the same day contestee filed a motion for a change of venue on account of the prejudice of the judge. Upon hearing this motion the court made an order transferring the cause to another division of the same court, which was then in session, presided over by a different judge.

The records were at once transferred to the court room of division one and the witnesses were ordered to report to that court. The judge of that division immediately called the case for trial.

Contestee thereupon filed an application to have the cause transferred back to division two on the ground that the order transferring it to division one was void. The motion was overruled and contestee excepted.

Contestee then filed a written objection to having the case then heard for the reasons that the court had

no jurisdiction over the cause and that the cause should be placed at the foot of the docket.    This motion was also overruled.

An application for a continuance was made on the twenty-second of said month, which was overruled.

Contestee then asked for time to prepare an application to continue on the ground of the absence of witnesses which was denied him.

The trial thereupon proceeded and at its conclusion the court found that Nash received three thousand, five hundred and fifty-eight and Craig three thousand, one hundred and eighty-three votes, giving a majority of three hundred and seventy-five in favor of contestant.

Judgment was rendered in accordance with the finding, and contestee appealed.

The rulings of the court on some of the matters excepted to are not made grounds of error here and only such matters as are insisted upon will be considered.

I.   Objection is first made to the right of the contestant to amend his notice so as thereby to include grounds of contest not specifically stated in the original.

The statute provides that no election of any county officer "shall be contested unless notice of such contest be given to the opposite party within twenty days after the votes shall have been officially counted," and that "the notice shall specify the grounds upon which the contestant intends to rely, and if any objection be made to the qualifications of any voters, the names of such voters and the objections shall be stated therein." R. S. 1889, sec. 4706.

While the statutes expressly provide that no formal pleading shall be required in cases of contested elections, yet it has been held that "this notice is the initi-

atory step in the contest and operates in the nature of a petition and writ in an ordinary civil action." *State ex rel. v. Smith*, 104 Mo. 667. Again it is said: "The notices, on the one side and the other, constitute the only pleadings." *Gumm v. Hubbard*, 97 Mo. 318.

While the proceedings in such cases are statutory and special, and jurisdiction of the subject-matter can only be acquired in the manner prescribed, yet the jurisdiction having been obtained by giving proper notice in the time and manner pointed out by the statute, no particular mode of subsequent procedure being provided, the rules applicable to practice in civil cases should govern.

The right to amend pleadings in furtherance of justice, was, at common law, discretionary with the court, and our code of practice is even more liberal. It provides that the court may, at any time before final judgment, in furtherance of justice, on such terms as may be proper, amend any pleading or proceeding "by inserting other allegations material to the case." R. S. 1889, sec. 2098.

No reason can be seen why, after the court has acquired jurisdiction over the subject-matter, that is, the election contest, the parties should not be allowed all the rights that are accorded to other parties in any other proceeding. Indeed, the reason for allowing amendments in those cases is more imperative than in most others because the rights of the public are also involved. It has been uniformly ruled that statutes governing elections should be given a liberal construction, whenever they will admit of it, and the same rule should be applied to the pleadings in order that substantial justice may be done, not only to the contesting parties, but to the public.

We find no case in this state in which the identical question has been directly passed upon.

In the case of *Shields v. McGregor*, 91 Mo. 546, 547, contestant filed what is termed by the court a "supplemental petition," in which grounds of contest are alleged other than those charged in the original notice. This amendment was, apparently, treated by the court as proper, though it was not necessary to pass upon the question.

Contestee cites us to no authority holding that the pleadings in such cases are not amendable, while contestant refers us to a number upholding the right. McCrary on Elections, secs. 406 and 396; *Election Cases*, 65 Pa. St. 20–31; *Heyfron v. Mahony*, 24 Pac. Rep. (Mon.) 96; *Ralston v. Meyer*, 12 S. E. Rep. (W. Va.) 783; *Halstead v. Rader*, 27 W. Va. 806; *Kneass' Case*, 2 Pars. Eq. Cas. 553; Paine on Elections, sec. 840.

McCrary says: "In the absence of any statute" (authorizing amendments) "the court trying a case of contested election may, under its general common law power, permit such a petition to be amended, and an amendment ought to be allowed whenever the court in the exercise of a sound discretion shall be of opinion that the ends of justice will be thereby promoted." McCrary on Elections, sec. 406.

The supreme court of Pennsylvania says: "It would be an intolerable technicality if the petitioners were required to set forth in their complaint, within ten days after the election, every illegal vote, every illegal act of the election boards, and every instance of fraud. Such a nicety would prevent investigation and defeat the remedy itself." *Election Cases*, 65 Pa. St., 36, *supra*.

The fifteenth ground of contest stated in the original notice is general in its allegations. In that ground contestant states: "That I have good reason to believe and I do believe that there were many other good and legal ballots cast for me from various pre-

cincts in said Buchanan county at said election which were not counted for me and that there were many illegal ballots in addition to those hereinbefore set out counted for you which were fraudulent and illegal, and further that I have good reason to believe, and do believe, that there are many disqualified persons other than those herein before mentioned who voted at said election and whose ballots were cast and counted for you, and that the names of such persons so disqualified and illegally voting and the precincts at which they voted are now unknown to me.''

These grounds are not as specific as the statute requires. By motion contestee could doubtless have required them to be made more specific. The general charge was, however, certainly a basis which would support the amendment. The grounds of contest were not thereby changed. *Minor v. Kidder*, 43 Cal. 229; *Dobyns v. Weadon*, 50 Ind. 298.

We are of the opinion that the amendment was properly allowed.

II. Exception was taken to the action of the court in overruling contestee's motion to quash the return of the county clerk to the order requiring him to open, examine, and recount the ballots.

The most serious objection made to the return is that the clerk appointed an assistant, other than a regular deputy, to assist in the work, and that much of the duty required of the clerk was performed by such person.

The statute requires that the writ issued by the court, or clerk in vacation, shall command the county clerk ''to open, count, compare with the list of voters and examine the ballots in his office, which were cast at the election in contest'' and certify the result to the court from which the writ issued. R. S. 1889, sec. 4721.

After providing for fixing the day for making the examination and giving notice, the duties of the clerk are thus enjoined.

Sec. 4723. "On the day so fixed the clerk shall proceed, in his office, to open such ballots, in the presence of the contestor and contestee and their attorneys, or such of them as demand to be present, and after swearing them not to disclose any fact discovered from such ballots, except such as may be contained in the clerk's certificate. While such ballots are open and being examined, the clerk shall exclude all other persons from his office."

Sec. 4724. "The clerk shall permit the contestor and contestee and their attorneys to fully examine the ballots, and shall make return to the writ, under his hand and official seal, of all the facts which either of said parties may desire, which may appear from the ballots, affecting or relating to the election for the office in contest."

Sec. 4726. "The certificate of the clerk, made under the provisions of this article, shall be *prima facie* evidence of the facts stated therein; but the persons present at the examination of the ballots may be heard as witnesses to contradict the certificates."

It is evident that the duties thus imposed upon the clerk are purely ministerial. He is given no authority to determine the validity of a single ballot. He is merely authorized to open the ballots in the presence of the contesting parties and their attorneys. The parties themselves are then permitted to examine the ballots and make objection to any of them. If requested by the parties the clerk is required to note the objections. The contested ballots with the objections are referred to the court. The judicial power rests in the court alone. The power to count, with which the clerk is invested, gives authority merely to foot up

the number of ballots in favor of the candidate for whom they were respectively cast.

The count, examination, and comparison is really made by the parties to the contest and their attorneys; the clerk merely keeps a minute of the objections of the parties and reports them to the court. His authority in determining the validity of the ballots, and the action of the election officers, is no greater than that given him and his assistants in examining and casting up the returns of the election officers of the various election precincts. Sec. 4684. It has been held that the duty performed by those canvassing officers is simply ministerial. *State ex rel. v. Williams*, 95 Mo. 162, and authorities cited.

Such ministerial duties, if performed under the supervision of the clerk, may be done by any assistant the clerk may select. "It is impossible in the very nature of things," says Judge SHERWOOD, "that an officer should be able to give his personal supervision to all the various business details of his office. If not allowed to employ assistants and subordinates, and to largely rely upon both their faithfulness and capacity, the public interests would often suffer detriment. It is sufficient, if the officer who makes the certificate has official knowledge of the facts to which he certifies; and such knowledge may well be derived from the above indicated sources." *Kefferstein v. Knox*, 56 Mo. 186.

That was an action on a special tax bill and it was admitted on the trial that the engineer, in whom was vested the power and duty, never made any personal examination of the work specified therein, but made the certificate upon the measurements made by a clerk employed in his office. See, also, *St. Louis to use v. Oeters*, 36 Mo. 463; *Nevada to use v. Morris*, 43 Mo. App. 586.

Nash v. Craig.

There is no proof that the duties of the assistant employed were not done as well and as faithfully as if every duty had been performed by the clerk himself.

This objection is not well taken.

III. No valid objection can be urged to the employment of a stenographer to preserve the objections made by the parties. The work of a stenographer has become a necessary part of court proceedings, the taking of depositions, and taking testimony before referees and commissioners. The work is by this means greatly facilitated and absolute correctness is secured. In requiring the clerks to note objections of parties the legislature is presumed to have intended that they might make use of all modern methods and instrumentalities in common use. These include the use of stenographers.

IV. Again, it is insisted that the return of the clerk should have been quashed for the reason that persons were allowed to be present at the examination of the ballots other than the contesting parties and their attorneys.

The court finds, and its finding is well supported by the evidence, that there were contests over the election of a number of other county officers, and that there was an agreement, or consent, of all the parties engaged in contests, that one examination and count should answer for all. Under this agreement each contesting party was allowed to be present. Appellant in this case, if not a party to this agreement, certainly made no objection, and should not be allowed to make objection for the first time after the result has been ascertained.

But we do not think the objection well taken for another reason. The chief object of the restriction contained in the statute in respect to the persons whom the clerk is authorized to admit, during the examination of

the ballots, is intended to preserve the secrecy of the ballots and the rights of the public. The presence of third persons could in no manner interfere with the rights of the parties to the contest or prevent a fair, honest, and impartial examination and count of the ballots. The statute was intended to subserve a public and not a private purpose. There is no claim that the presence of unauthorized persons in any manner interfered with the duties of the clerk or the rights of the parties.

V. It is urged that the condition in which the ballots were returned and the manner in which they were preserved were such as to destroy the presumption that the ballots counted by the clerk were identical with those voted and counted by the election officers.

The evidence shows that the ballots were returned in envelopes furnished for that purpose by the county clerk. In some instances the envelopes were too small to hold the ballots voted at the precinct, from which they were returned. For that reason some of the envelopes were not sealed. Others were not sealed from the negligence of officers whose duty it was to do so. The court further found that all the envelopes were either sealed, or secured by cords, wire, or rubber bands, and the ballots were deposited in the vault of the county clerk's office.

The conclusion of fact found by the court was "that said vault doors were always securely fastened at night, and under the immediate charge and control of the county clerk or his deputies when opened in the daytime; and there was no evidence that any of the ballots had been tampered with in any manner or at any time or at any place, nor is there any evidence of any intentional fraud in this case anywhere."

The conclusion of fact reached by the court is justified by the evidence and is conclusive on us. The

fact that some of the envelopes were not sealed or were somewhat torn and mutilated is not at all conclusive that the ballots had been tampered with, but is merely evidence to be weighed with the other facts and circumstances. As was recently said, "the ultimate fact must be found by the trier of the fact, by the weight of the evidence." *Sone v. Williams*, 130 Mo. 530.

VI.    It is insisted in the next place that the count or canvass of the clerk should not be taken as *prima facie* correct. The statute says that the certificate of the clerk shall be *prima facie* evidence of the facts therein stated.    It is true the statute does not in express terms require the clerk to state in his certificate the result of his examination.    He is, however, required to state the facts and the result would necessarily be a mere matter of mathematical calculation.    It would, therefore, be fairly within his duty and authority to determine and certify the number of ballots cast for each candidate.    That fact is made *prima facie* evidence of the result.

We understand from the certificate of the clerk that he counted every vote cast for the respective parties, both where its validity was undisputed and where one or other of the parties made objection to it.    This we think was the manner in which the statute intended he should perform his duty.    The result thus found constituted the basis upon which the court was to act. The number of the ballots cast for each party and the footings are certified to the court and the result is taken as *prima facie* correct, and the court passes upon the validity of the contested ballots.    The recount by the clerk takes the place of the canvass by the election officers.    This rule has been generally recognized.    The count by the clerk is called a recount.    *Gumm v. Hubbard*, 97 Mo. 311; *Hall v. Schoenecke*, 128 Mo. 661.

The judges of the election are required to judge of the qualification of the voters and the legality of the ballots, while the clerk in recounting exercises no such power. The certificate of the clerk is therefore the more reliable for the court to adopt.

VII. On the trial the court rejected two thousand, three hundred and fifty-eight votes cast for Craig and two thousand and seventeen cast for Nash for the reason that the judges of election had neglected to put on the ballots the registration number, as is provided shall be done by section 4672. But as we calculate the vote, the result will be the same whether these votes are counted or rejected.

The count of the clerk gives to Nash, five thousand, eight hundred and twenty-seven votes. Upon the trial the court excluded of these the following, as given by appellant in his statements:

*Ballots taken from contestor Nash and held to be illegal.*

*First.* Ballots in precinct B, sixth ward, containing no voting number .. ........................ .... .... . .. .............. 174

*Second.* Ballots in New Ulm precinct cast after polls were closed... 3

*Third.* Ballots voted in two or more groups and those not properly prepared..... . . ....................... .... ................. 20

*Fourth.* Ballots in precinct A, sixth ward, not numbered as voted... 15

*Fifth.* Ballots cast by persons not citizens of the United States..... 7

*Sixth.* Ballots cast by persons not twenty-one years of age....... . 2

*Seventh.* Ballots cast by persons not having resided in state one year............. .................... ................. ........ 1

*Eighth.* Ballots cast by persons not living in precinct where vote was cast...................................... .......... 1

*Ninth.* Ballots changed by voters after opening ballot boxes....... 5

*Tenth.* Ballots having Nash written under Craig and Craig not erased........... ............................. ...... .. ..... 6

*Eleventh.* Ballots having Nash written under Forgraves and Forgraves not erased ......... ................ .......... ...... 1

*Twelfth.* Ballots having number on back greater than the total number of votes cast........................................... 12

*Thirteenth.* Ballots in Willow Brook precinct not numbered as voted. 15

*Fourteenth.* Ballots where two correspond to same number......... 26

Total........................... ..................... 288

Of the twelve ballots mentioned in the twelfth head ing above, eleven were cast in said precinct B, sixth ward, and are covered by the first heading above, so that they should be deducted from the above total, leaving two hundred and seventy-seven.

The count by the clerk gives contestee Craig five thousand, seven hundred and fifty-two votes.

*Ballots taken from Craig and held to be illegal:*

*First.* Ballots in precinct B, sixth ward, containing no voting number ................................................................. 143

*Second.* Ballots in New Ulm precinct, cast after polls closed ........ 2

*Third.* Ballots voted in two or more groups, and these not properly prepared ..................................................... 11

*Fourth.* Ballots in precinct A, sixth ward, not numbered as voted.. 30

*Fifth.* Ballots cast by persons of foreign birth, first papers less than one year .............................................. 8

*Sixth.* Ballots cast by persons of foreign birth, first papers more than five years, no final papers .................... 9

*Seventh.* Ballots cast by persons of foreign birth, no papers ........ 3

*Eighth.* Ballots cast by persons who had not resided in state one year ...................................................... 4

*Ninth.* Ballots cast by persons not living in precinct where vote was cast ..................................................... 3

*Tenth.* Ballots having Craig written under Nash and Nash not erased. ..................................................... 3

*Eleventh.* Ballots having number on back greater than total number of votes cast ................................................. 2

*Twelfth.* Ballots in Willow Brook precinct, not numbered as voted.. 6

*Thirteenth.* Ballots where two correspond to same number.......... 45

Total...................................................... 270

The vote would then stand: Nash, 5550, Craig, 4482; majority for Nash, 68.

Now appellant only excepts to the ballots in which two contained the same number, 45; votes in which the court improperly found the voters not qualified, 12; total 57; leaving still a total majority for Nash of 11.

So we are not called upon to determine the correctness of the ruling of the court in counting or rejecting

votes as the result will not be changed, though every objection be sustained. The judgment is affirmed. All concur.