STATE OF MISSOURI, at the Relation of CARL F. BLOKER, Relator, v. WILLIAM DYER BYRD and PETER HUCK, Judge of the 27th Judicial Circuit of the State of Missouri, Respondents.

St. Louis Court of Appeals.    Opinion Filed November 23, 1921.

1. **ELECTIONS: Contests: Return to Order Directing Recount: Sufficiency: Raised by Motion to Quash: Prohibition.** If, in fact, the Constitution was transgressed by a city clerk in making a return to an order directing a recount of ballots cast in a contested city election, a motion to quash was the appropriate method to raise the question.

State ex rel. v. Byrd.

2. **COURTS: Jurisdiction: Constitutional Questions: Election Contests:
   Motion to Quash Order Directing Recount: Sufficient to Raise
   Constitutional Question.** A motion to quash a return of a city clerk
   to an order directing a recount of ballots cast in a contested city
   election, charging that the certificate and return of the city clerk
   violated the Constitution and laws of the State of Missouri in
   relation to the secrecy of the ballot, and sets out and names the
   voters and states for whom they voted when such voters were not
   mentioned or named in the notice of contest, and was in excess
   of the order commanding a recount, etc., sufficiently raised a
   constitutional question, though the exact number of the article and
   section of the Constitution alleged to have been violated was not
   given, considering the return of respondents, wherein the provision
   of the Constitution referred to is given as article 8, section 3,
   showing that the exact provision of the Constitution was before
   the court *nisi* by argument and pleadings, though the pleadings
   did not give the number of the provision, and in passing upon
   motion to quash the court would be compelled to construe the
   Constitution.

3. ――――: ――――: ――――: **Court of Appeals Without Jurisdiction:
   Prohibition.** Where a constitutional question under the facts and
   circumstances of the particular case has been sufficiently raised
   and is present, the Court of Appeals is without jurisdiction.

Prohibition.   Original Proceeding.

PRELIMINARY RULE QUASHED AND WRIT DENIED.

*C. G. Shepard, Gallivan & Finch,* and *Shepard Barclay* for relator.

*Ward* and *Reeves, N. C. Hawkins, C. J. Stanton,*
and *Peter J. Barrett,* for respondents.

(1) It is not necessary to set out the particular constitutional provisions violated in words. State ex rel,
Campbell v. St. Louis Court of Appeals, 97 Mo. 276;
Baldwin v. Fries, 103 Mo. 286. (2) It is not necessary to
refer to the sections of the Constitution violated by their
numbers. State ex rel. Campbell v. St. Louis Court of
Appeals 97 Mo. 276, Baldwin v. Fries, 103 Mo. 287. (3) It
is only necessary to plead the facts and the courts must
apply the law (constitution) to the facts pleaded. State

ex rel. Campbell v. St. Louis Court of Appeals, 97 Mo. 276. (4) It is enough if the record shows that in the disposition of the appeal there is involved the construction of some provision of the Constitution of the United States or of this State. State ex rel. Campbell v. St. Louis Court of Appeals, 97 Mo. 276. (5) Where a constitutional question is in good faith presented by the record, the jurisdiction of the Supreme Court will not be defeated, even should a decision of such question prove to be unnecessary to the final disposition of the case on appeal. Skinner v. Railroad, 254 Mo. 228; City of Milan v. Allen, 175 S. W. 933; Dorrance v. Dorrance, 294 Mo. 625; Kircher v. Evirs et al. 210 S. W. 917. (6) It is the duty of the Supreme Court to determine constitutional questions when they are fairly raised by the record and the Courts of Appeal are without jurisdiction in such cases. State ex rel. Campbell v. St. Louis Court of Appeals, 97 Mo. 276; Schuster v. Weiss, 39 Mo. App. 633; Ex Parte Olden, Cromer & Baker, 37 Mo. App. 116; State v. Dinnesse, 41 Mo. App. 22; City of Springfield v. Weaver, 66 Mo. App. 293. (7) A constitutional question is necessarily involved whenever the conclusion reached could only be arrived at after a construction of the Constitution. State ex rel. Curtice v. Smith, et al., 177 Mo. 69; State ex rel. v. Smith, 152 Mo. 444; State ex rel. v. Smith, 141 Mo. 1; Kirkwood v. Meramec Highlands, 160 Mo. 118; Kankana v. Green Bay, 142 U. S. 254; Town of Canton v. McDaniel, 91 Mo. App. 626; Placke v. U. S. R. Co., 140 Mo. 634; Schuster v. Weiss, 39 Mo. App. 633; Murrell v. McGuegan, 68 Mo. App. 121. (8) It cannot be laid down by rule how every constitutional question might be raised in the trial court. It is sufficient if it be fairly and directly presented by some of the methods (pleadings) recognized by the practice and procedure. Bennett v. Mo. Pacific Railroad Co., 105 Mo. 642. (9) The word " involving" as used by the Constitution in fixing the appellate jurisdiction of the Supreme Court, implies that a constitutional question was raised in and submitted to the trial court, and that such

court had the opportunity to pass upon it. Bennett v. Mo. Pacific Railway Co., 105 Mo. 642; Hardwicke v. Wurmm, 264 Mo. 138. (10) Construction signifies determining the meaning and proper effect of language by consideration of the subject-matter and attendant circumstances in connection with the words employed. Construction applies the language interpreted to both the subject-matter and the attendant circumstances. Dorrance v. Dorrance, 242 Mo. 644. (11) When a constitutional question is raised by petition, answer, reply, instruction, motion to quash or motion to strike out, and the party raising such constitutional question states the facts showing a violation of the Constitution, he comes into the open and puts his finger on the specific provision of the Constitution alleged to be violated, although he does not set out the particular constitutional provisions violated in words, nor refers to the sections of the Constitution violated by their numbers. Lohmeyer v. Cordage Co., 214 Mo. 688; State ex rel. Campbell v. St. Louis Court of Appeals, 97 Mo. 276; Bennett v. Mo. Pacific Railway Co., 105 Mo. 642. (12) While it is true that on a bona-fide allegation in the notice of contest an examination and comparison of the ballots may be made and even a certificate as to how particular voters voted, still this certification and exposition of the secrecy of ballots of voters, who are not questioned in the pleadings, is unnecessarily exposing the secrecy of ballots as to such voters, and is contrary to the provisions of the State Constitution. Art. 8, sec. 3, Constitution of Mo.; Gantt v. Brown, 560 Mo. 581; Gass v. Evans, 338 Mo.—; Winds v. Nelson, 159 Mo. 51. (13) A motion to quash is the proper way to raise a constitutional question in this case, and was the first opportunity contestee had to object to said certification. Nash v. Craig, 134 Mo. 347. (14) Relator has a speedy and adequate remedy by appeal or writ of error. Secs. 4900, R. S. 1919. (15) A writ of prohibition will not lie to correct errors of the circuit court when the same may be reviewed by appeal or writ

of error. Hoops v. Blair, 105 Mo. 93; In Re Buck, 252 Mo. 302, 237; Dowdy v. Wamble, 110 Mo. 284; State ex rel. v. Hough, 193 Mo. 652; State ex rel. v. Riley, 203 Mo. 192-3; State ex rel. v. Withrow, 108 Mo. 7-8; State ex rel. v. Evans, 184 Mo. 643-4; State v. Henson, 217 S. W. (Mo. Sup.)18; State ex rel. Eleson, 10 S. W. (Mo. App.) 410; State v. Shoehorn, 246 Mo. 559; State v. Stobie, 194 Mo. 45.

DAUES, J.—This is an original proceeding in prohibition against the Honorable Peter Huck, of the 27th Judicial Circuit, as Judge of the circuit court of Ste. Genevieve county, Missouri, with whom William Dyer Byrd is made respondent. The object of the proceeding is to prohibit Judge Huck from sustaining a motion to quash the return of the city clerk of the City of Caruthersville in an election contest pending in the circuit court of Ste. Genevieve county. On relator's application we heretofore issued our preliminary rule in prohibition. Respondents filed separate returns, to each of which relator pleaded by a motion to quash, challenging the sufficiency of the returns as an answer or defense to the preliminary rule made herein by this court.

The material facts are as follows: An election contest was instituted in the circuit court of Pemiscot county by Carl F. Bloker, as contestant, against William Dyer Byrd, respondent, as contestee, involving the office of Mayor of the City of Caruthersville. A change of venue was granted to the circuit court of Ste. Genevieve county, where the cause is now pending.

Contestant Bloker, in June, 1920, applied to the circuit clerk of Ste. Genevieve county for a writ of recount, the court then being in vacation. The application prayed for an order directing the clerk of the City of Caruthersville to open, count and examine the ballots that were cast in Wards 2 and 3 in the election for the office of Mayor of that city, held in April, 1920, and to compare such ballots with the list of the voters in his office which were cast at said election in said Wards and to certify

the result of such count, comparison and examination, so far as the same related to the office which is in dispute.

The circuit clerk in May, 1920, issued the order, directing said city clerk to open, count and examine the ballots cast in Wards 2 and 3 in said city election, and to compare the same with the list of voters, and to proceed fully to examine said ballots in the presence of contestant and contestee and their attorneys, and to permit them to fully examine the ballots, and after making such examination, count and comparison, to make return to said order and writ of the result of such examination, count and comparison. Contestant in his amended notice of contest alleged that the judges and clerks in Ward 3 changed the ballots of legal voters who voted for him and refused to count such votes, and set forth in detail the names of said voters whom contestant claimed the judges and clerks in said Ward changed. The same allegation was made as to Ward 2, and it was set forth in detail the names of the voters whose ballots contestant claims were there changed against him. In the third Ward contestant claimed that many legal votes were cast for him but were not counted by the judges and clerks of election, also that many illegal votes were cast and counted for contestee in Ward 3, but the names of such illegal voters were not given. And it is alleged, further, that in both Wards 2 and 3 legal votes were cast for contestant but were not counted by the judges and clerks, and that many votes were cast in these Wards for contestee by parties not entitled to vote at said election without specifying the names of such illegal voters.

It is further charged by contestant that in Ward 3 the election law was violated by the judges and clerks in secretly preparing ballots of illiterate voters, making them out for contestee when they were requested by the voter to make them out for contestant. Neither the names nor the numbers of such illiterate voters are given.

The city clerk in the so-called return gave the name of each and every voter in said Wards, the number of his ballot and for whom he voted. It is contended by contes-

tee that no such certification of voters is requested in the application for writ of recount, nor that such certification is directed by the circuit clerk in the writ of recount itself; and that the action of the city clerk in certifying such names as were not questioned by the contestant in his notice of contest, nor in the application for the writ of recount and not included in the writ of recount itself, unnecessarily exposed the secrecy of the ballots of such voters, because the validity or legality of the ballots of such voters were not made an issue in any way by the pleadings in the cause. Contestee insisted that the action of said clerk in so certifying to such names was contrary to the provisions of Article VIII, Section 3 of the Constitution of the State of Missouri protecting the secrecy of the ballot.

Accordingly, on December 16, 1920, the contestee (respondent Byrd), filed a motion in the circuit court to quash the return of the city clerk upon the ground that such return, among other things, violated the Constitution of the State of Missouri in relation to the secrecy of the ballots, in that it set out and named hundreds of voters and stated for whom they voted when such voters had not been named or mentioned in the notice of contest, or alleged to have been fraudulently cast or counted at said city election. So much of said motion as becomes pertinent here is as follows:

"Said certificate and return of said city clerk violates the Constitution and laws of the State of Missouri in relation to the secrecy of the ballot and is in violation of the said Constitution and laws and in violation of the order and writ of the recount so made and issued by the clerk of this court, sets out and names hundreds of voters and states for whom they voted, which said numerous voters are not mentioned or named in the notice of contest in this cause or alleged to have been fraudulently cast or counted at the said City Election.

"Because said return and certificate violates the order made in the writ of recount heretofore issued by the clerk of this court in vacation and is in excess of the

order made in said writ in that it sets out hundreds of names of voters giving the names of the voters, the numbers of their ballots and for whom they voted not mentioned or named in the said writ of recount and because said writ of recount does not provide for the certification of how any voter voted or to destroy the secrecy of the ballot of any voter voting at the election in contest.''

Contestant thereupon filed his motion to strike out contestee's motion to quash the return of the city clerk, alleging that the secrecy of the ballots was not violated by said return; that such exposition could have been avoided by contestee objecting at the time the recount was made and certified to, which, it is alleged, contestee did not do, and that the contestee and his attorney being present at the time the ballots were being examined, etc., made no objection to the method of the recount; and, further,

''Because the return of the city clerk filed in this cause is no part of the proceedings now before the court but is a matter which may become prima-facie evidence during the trial of this cause as provided by section 5594, Revised Statutes 1909, and subject to objections in whole or in part, when offered in evidence and by this motion contestee is endeavoring to have the court rule evidence not before the court.''

''Because the secrecy of the ballot is not a matter in which the contestee is concerned at this time, inasmuch as his rights are in no way affected thereby, and such exposition as the return discloses has already been brought about and cannot be changed by the court, sustaining said motion at this time and if contestee is unwilling for such facts as are contained in the certificate, being certified to this court, it was the duty of the contestee to object at the time the record was being made, and have a writ of prohibition to issue preventing the clerk making such certificate.''

This motion being filed, the return of respondent Judge Huck informs us, testimony was offered upon same by both contestant and contestee. The motion to strike

out was considered and overruled, and thereafter (quoting from the return of Judge Huck), "on the same day this respondent as the judge aforesaid, then took up the motion of respondent, William Dyer Byrd, to quash the return of the city clerk of Caruthersville and announced in this respondent's opinion, as judge aforesaid, that the return of said city clerk was in violation of article VIII, section 3 of the Constitution of Missouri, in that it had unnecessarily exposed the secrecy of the ballots of hundreds of voters, including the ballot of contestee, whose ballots were not questioned by contestant either in his motion of contest, his application for writ of recount or the writ of recount itself, and announced his intention of sustaining the motion to quash the return of said city clerk; that thereupon, on the same day, relator through his counsel requested this respondent, as judge aforesaid, not to pass on the motion at that time in order to afford them an opportunity to apply to the Supreme Court of the State of Missouri for a writ of prohibition against this respondent as Circuit Judge aforeaid."

The return of Judge Huck further shows that he did, in fact, consider article VIII, section 3 of the Constitution of Missouri, which, the respondent judge alleges, was involved in the determination of the controversy, and that he heard testimony "on behalf of contestant and contestee for the purpose of determining whether or not contestee or his counsel had waived the constitutional question raised by them by reason of consenting or agreeing to said certification of the city clerk, etc."

And, further, said return states: "The constitutional question aforesaid was fairly raised and presented to him as judge aforesaid, and that by reason of said constitutional question so presented, argued and heard by him, as judge aforesaid, and also as raised herein (return), this Honorable St. Louis Court of Appeals is without jurisdiction in this cause."

Respondents, returns are unduly cumbersome and tedious. We have given sufficient reference to the return of Judge Huck, however, to define the issue addressed to us for determination.

At the threshold we confront the question as to whether there is a constitutional question in the case, and if so, whether same has been properly raised.

Observably, respondent Byrd by his motion to quash in the circuit court, as will be seen from the sixth clause above set forth, directs the attention of the court to the fact that the "return" of the city clerk contains names of voters who were not named or mentioned in the notice of contest, and that in doing so same "violates the Constitution and laws of the State of Missouri in relation to the secrecy of the ballot, and is in violation of the State Constitution and laws and in violation of the order and writ for the recount so made and issued by the clerk of this court; sets out and names hundreds of voters and the names for whom they voted, which said numerous voters are not mentioned or named in the notice of contest, etc;" and by the seventh clause, that said return and certificate of the clerk violates the order of recount in that it mentions names of hundreds of voters not comprehended in the order of the circuit clerk and thereby "destroys the secrecy of the ballot."

Undertaking therefore the most serious question of the case at the outset: Does this reference in the motion to quash, sufficiently raise a constitutional question to come within the rule as expounded by our Supreme Court?

That the question was timely raised cannot be seriously questioned. If, in fact, the Constitution was transgressed by the city clerk in the making of this return, the respondent's motion to quash was the appropriate method to raise the question. [See Nash v. Craig, 134 Mo. 347, 35 S. W. 1001.] But it is a more difficult problem as to whether the question was *sufficiently* raised in the motion to quash. In other words, was it necessary for respondent to give the exact section and article of the Constitution by number in order to draw the issue into the cause? There are many cases in this State discussing the general question.

Counsel for respondents point directly and hold fast to the case of State ex rel. Campbell v. St. Louis

Court of Appeals, 97 Mo. 276, 10 S. W. 874. This case, opinion by BLACK, J., decides positively and with directness that it is not necessary to set out the sections of the Constitution or to refer to them by their numbers in order to raise a constitutional question. Said Judge BLACK (l. c. 281):

"It was not necessary to set out in the answer the sections of either Constitution, or to refer to them by their numbers. The whole theory of our code of civil procedure is, that the parties must plead facts and the courts must apply the law to the facts pleaded and proved. It is enough that the record shows that in the disposition of the appeal there is involved the construction of some provision of the Constitution of the United States or of this State. This will sometimes appear from the pleadings, and in actions at law it will often appear by the instructions given or refused, and probably in other ways. Looking to the answer in this case we are referred to the constitutional provisions before quoted with quite as much certainty as if they had been set out in words."

This case has not been overruled, but has been referred to approvingly, even very lately, by our Supreme Court.

In Baldwin v. Fries, 103 Mo. 286, 15 S. W. 760, it is said:

"It is not necessary that the particular provision of the Constitution be set out, but it must appear that the constitutional question was involved in the issues in the case, and that the trial court had an opportunity to and passed upon such question; it cannot be injected into the cause for the first time in the appellate court by argument or brief of counsel."

In Hardwicke v. Wurmser, 264 Mo. 138, 174 S. W. 808, Judges GRAVES, in quoting from the case of Security Savings Trust Co., 145 Mo. 431, 46 S. W. 959, adopts this reference to the Campbell case:

"The word involving as used by the Constitution, in fixing the appellate jurisdiction of this court, implies

that a constitutional question was raised in and submitted to the trial court, and that such court had the opportunity to pass upon it. It cannot be laid down by rule how every such question must be raised in the trial court, but it should, at least, be fairly and directly presented by some of the methods recognized by the practice and procedure of the court. [State ex rel. Campbell v. St. Louis Court of Appeals, 97 Mo. 278, 10 S. W. 874; Railroad v. Seifert, 41 Mo. App. 37.]"

In Schuster v. Weiss, 39 Mo. App. 633, this court, relying upon the Campbell case, transferred that case to the Supreme Court because of the presence of a constitutional question, although the defendants in that case did not set out the provision of the Constitution violated in words, nor referred to the numbers of any constitutional provision said to have been violated, the court saying: "Whenever the record in any case fairly presents a constitutional question, it is made our duty to certify the case to the Supreme Court, although we may be of the opinion that the question is without merit."

In Ex parte Olden, Cramer & Baker, 37 Mo. App. 116, the court holds, on authority of the Campbell case, that a constitutional question is involved when it is fairly raised on the record. To like effect, see State v. Dinnisse, 41 Mo. App. 22.

City of Springfield v. Weaver, 66 Mo. App. 293, is a case where the constitutional provision alleged to be involved was not set out, nor was it referred to in any way by number. In that case the defendant objected to the introduction of any evidence at the trial of the suit on a special tax-bill. The objection was made because no provision for any kind of notice to the property owner was provided for in the law under which the taxes were levied, and it was contended that it was therefore unconstitutional and void. The court there held that the constitutional question was fairly raised by the record and adjudicated by the court.

Contestee in his motion to quash certainly attempted to raise a constitutional question. Now, what did he do to point to the Constitution, and how did he endeavor

to direct the court to the exact provision which he deemed offended by the city clerk's return?

Counsel for relator, in a very learned discussion, contend that under the latest decisions of our appellate courts it is necessary that the party seeking to raise the constitutional question must recite the exact number of the article and section of the Constitution so that reference may be made by the courts to the exact provision by its numbers. We have examined the cases cited by counsel for relator, and we have made diligent search of our own to see whether the courts have announced such rule. We confess we are not cited to any cases, and we have not found anywhere such doctrine is adopted.

Contestee in his motion to quash charged that the city clerk in his return violated the Constitution of the State of Missouri, in that it contained the names of hundreds of voters, together with the numbers of the ballots and for whom they voted, when such ballots were not questioned by the contestant, and that it violated that portion of the Constitution of the State which relates to the secrecy of the ballot, there being only one such provision in the Constitution, and that it violated the Constitution of the State in that the return set out many names and gave other information not called for in the notice of the election contest, and that it exposed contestee's own ballot, etc., and that the return of the clerk was far in excess of the order of the circuit clerk commanding such recount.

The motion sets out with particularity in what manner the Constitution of the State relating to the secrecy of the ballot is alleged to have been violated. Contestant in his motion to strike out avers that the secrecy of the ballot is not a matter in which the contestee is concerned, in as much as his rights are not affected thereby. Respondent, Judge Huck, in his return shows that the court considered the constitutional question raised and sought to determine such question.

Now, let us see whether there is anything in the decisions of our Supreme Court later than the Campbell case, supra, which changes or destroys the ruling in that case.

Relator cites us specifically to the following cases: Hulett v. Missouri, K. & T. Ry. Co., 145 Mo. 35, 46 S. W. 951; Lohmeyer v. St. Louis Cordage Co., 214 Mo. 685, 113 S. W. 1108; State v. Campbell, 214 Mo. 362, 113 S. W. 1081; State v. Swift & Co., 270 Mo. 694, 195 S. W. 996, and says that under the authority of these cases it was necessary for respondent, in asking the protection of the constitutional provision "to put his finger on the very *clause* and *section* of the Constitution that he claims is being violated, and unless the clause and section of the Constitution is pointed out no constitutional question is raised." And relator further cites the following further cases, which it is claimed require the respondent "to put his finger on the clause of the Constitution that is claimed to have been violated:" [Brookline Canning & Packing Co. v. Evans, 238 Mo. 599, 142 S. W. 319; Stegall v. Amer. Pigment & Chemical Co., 263 Mo. 719, 173 S. W. 674; Davidson v. Hartford Life Ins. Co., 151 Mo. App. 561, 132 S. W. 291.]

The case of Hulett v. Missouri, K. & T. Ry. Co., supra, which is the foundation of the other cases cited, is a suit by plaintiff against the railroad company for making an excavation below the surface of the street abutting plaintiff's property, for which he asked damages. The railway company filed a general denial; plaintiff recovered a verdict, and defendant appealed. In the trial of the case the defendant was refused an instruction which made reference to a violation of defendant's right granted by the Constitution of the State of Missouri and of the United States "and would deprive the defendant of its property and rights without due process of law." The court held that the terms "due process of law" and "the law of the land" are interchangeable terms, and that the constitutional provision respecting "due process of law" was fully complied with, the court concluding as follows:

"As to the generalities contained in the instruction mentioned relative to the Constitution of this State and of the United States, it suffices to say that neither the court below nor this court has any call to search through

the respective organic laws of the State or Union in order to find out in what *particular* either of them may have been supposed to be violated. The trial court, therefore, did right in refusing the instruction aforesaid, conceding for the moment that an instruction in relation to a constitutional question is, in any case, suitable to give to a jury." (Italics ours.)

Upon the above language relator places his reliance.

In Lohmeyer v. Cordage Co., supra, Judge LAMM presented a very comprehensive study of this subject. The case was one for damages for personal injury. The constitutional question was first raised after verdict and judgment. In the motion for a new trial filed by the defendant it was alleged that a certain section of the statutes was unconstitutional; because it was special legislation as denounced in sections 53-4, article 4 of our Constitution; because it deprived defendant of its rights as a citizen of the United States under section I of the Fourteenth Amendment of the Federal Constitution, and because said statute and verdict deprived it of its property without due process of law guaranteed by said Fourteenth Amendment.

Concerning this, Judge LAMM said:

"A constitutional question might possibly obtrude itself at the trial regardless of the pleadings through some unanticipated ruling on the introduction of testimony when such question was squarely and with due precision made on objection and exception saved. If raised in that way in an appropriate case, and if the trial court had a chance to correct its error under an appropriate ground in the motion for a new trial, the point would be saved on appeal. So a constitutional question might be preserved on appeal in rare cases by a clause in the motion for a new trial when it did not appear elsewhere in the record. An example of that kind of a case would be where the court had given some instruction directly or by necessary implication for the first time involving the Constitution—for instance, permitting nine jurors out of twelve to render a verdict. [Logan v. Field, 192 Mo.

l. c. 66.] In such case, or cases of a kindred nature, the first door open for a constitutional question to enter would be the motion for a new trial. Appellant could raise it no sooner and nowhere else.

"If plaintiff grounds his right of action on a statute which defendant contends is unconstitutional it should be put in the answer and kept alive. If the defendant grounds an affirmative defense on a statute that plaintiff contends has a like vice, it would seem he should plead its unconstitutionality in the reply (though that has been questioned). [Kirkwood v. Meramec Highlands Co., 160 Mo. 111.] If proper to put it in instructions, it should be lodged there and the ruling of the court involved. Unless one or the other of these courses is pursued, life enough is kept in no such question to give this court jurisdiction on appeal except in one instance, viz.: where on the whole case some provision of the Constitution was either directly or by inexorable implication involved in the rendition of the judgment and decided against appellant. The foregoing propositions are within the letter and reasoning of a line of cases."

It was contended in that case that the defendant objected to the introduction of any testimony on the ground that the petition did not state facts sufficient to constitute a cause of action, and, again, that a demurrer to the evidence at the close of plaintiff's case, and again at the close of the whole case was asked, and that such challenges involved a constitutional point according to recognized canons of procedure, and it was in answer to this that Judge LAMM said:

"Whatever the use of an ambush in war, or games of chance, its use does not commend itself to jurisprudence. An appellant may not mask his position in that way and preserve under such cover his constitutional point. Nor would a general reference to the Constitution, State or Federal, do. He must come into the open and put his finger on the specific provision of the Constitution touched by the adverse ruling."

In the case of State v. Campbell, 214 Mo. 362, 113 S. W. 1081, it was held that the constitutionality of the Local Option Law having been affirmatively determined by a long line of decisions prior to that appeal and in the very particular in which the constitutionality was there assailed, the Supreme Court would not take jurisdiction of the appeal on the sole ground that the constitutional question was there involved, but would hold that such question was no longer debatable, and accordingly the case was transferred to the Kansas City Court of Appeals.

In the case of State v. Swift & Co., supra, a criminal case, the court held that a constitutional question is neither timely nor sufficiently raised by an assignment in the motion in arrest that "the facts stated in such information did not constitute a charge of offense under the Constitution and laws of this State;" and that such bare statement was not sufficiently definite to entitle it to consideration; that in raising a constitutional question the particular provision alleged to be violated must be pointed out, citing Lohmeyer v. Cordage Co., supra.

These cases are directly relied upon as authorities to the effect that one must give the *number* of the *article* and *section* of the Constitution to bring such question into the case. These cases do not so hold, if we understand them correctly. The Hulett case declares that the court shall not be required to "search through the organic laws of the State or Union in order to find out in what *particular* either of them may have been supposed to be violated."

In the Lohmeyer case, Judge LAMM held that you cannot practice ambush warfare in the trial of a case by objecting to the introduction of testimony on the ground that the petition does not state a cause of action, or offer a demurrer to the evidence, and then afterwards in a motion for a new trial point out wherein it is believed the Constitution was involved, but it is the duty of the litigant to "come into the open and put his

finger on the specific provision of the Constitution touched by the adverse ruling. This case does not hold that you must give the numerical character denoting the section involved.

Now, then, did respondents at the first opportunity, to-wit when the motion to strike out was filed, put his finger upon the Constitution, and that part of it particularly relied upon? Did he call the court's attention to the particular manner in which the Constitution was violated?

By the motion, though no numerical characters were given, the particular part of the Constitution which protects the secrecy of the ballot was pointed out by respondent, and, more than that, it was pointed out in what manner and in what particular the Constitution was being transgressed. The motion pointed out how contestee's ballot and other names and ballots were made public, and how same was beyond the order of the circuit clerk, and in what manner the exposure was made in violation of the Constitution. That certainly is enough to satisfy the decision in the Lohmeyer case.

There were no general objections made that the Constitution was being violated, but the *manner* in which it was being violated was made known. The Lohmeyer and the Swift cases do not say that it is necessary to give the article and section of the Constitution claimed to have been violated by numerical characters. All they do say is that the particular provision of the Constitution involved must be pointed out. If it is necessary that the number of the article and section must be given, then it is axiomatic that the number must be correctly given, and of course when such number is incorrectly given the constitutional question is not raised. Could it be. said that if a mistake is made only in giving the numbers of the constitutional article and section, though otherwise referred to with unmistakeable certainty, that the constitutional question is thereby defeated? Suppose, as in this case, the correct citation to the Constitution being article VIII, section 3, same should be given as

article VII, section 3.  Would that in itself defeat the
question if it was clearly pointed out by other methods
that article VIII, section 2 was relied upon?  We think
not.

Now, if the constitutional provision relied upon is
set out in *haec verba,* it certainly would be a compliance
with the Supreme Court's direction that the provision be
pointed out.  Certainly then the setting out of enough
of such provision which unmistakeably points out what
section is intended would be sufficient.  It would be a
harsh rule, indeed, and it would be a complete disre-
gard of the rule of reason which is ever present in the
exposition of the law, to say that the failure to give the
exact numericals under which constitutional provisions
are found, regardless of what else may be done to des-
ignate such provision, defeats the constitutional point
in the case.

What the Supreme Court said in those cases was that
there should be at the earliest possible moment an ap-
prizal to adversary and court of the exact provision of
the Constitution relied upon, so that the court and ad-
versary may see the application as it is intended to be
made of the Constitution, and also to be informed of what
facts and circumstances in the case address themselves
to the constitutional question, and give the court an op-
portunity to pass directly upon the question.

What Judge Lamm undertook to show in the Loh-
meyer case was the manner in which the constitutional
question should be raised in our practice and procedure,
and the difficulty of laying down a hard and fast rule
which would apply to all cases.  And hence it is said in
that case that the constitutional question might obtrude
itself at the trial regardless of the pleadings from some
unanticipated ruling on introduction of testimony, when
such question was squarely and with due precision made
on objection and exception saved, and that if raised in
that way in an appropriate case and if the trial court
*had a chance to correct its error* under an appropriate
ground in the motion for a new trial, the point would
be saved on appeal.

What we conceive the rule to be is that it is necessary to point to the Constitution and declare how the Constitution is being violated with such certainty that the court is directed to the exact provision intended and the manner in which it is alleged to be involved. This the contestee did, in our judgment.

The case of Stegall v. Am. Pigment & Chem. Co., supra, is relied upon by relator. That case is a fair example as to what is declared to be the rule in the cases generally, and that is, that the raising of the constitutional question is not a mere matter of assignment, and that it is not enough to say that a judgment "violates the defendant's rights under the due process provision of the Constitution," because, as it is said in that case:

"If it could be said that the due-process clause of the Constitution is violated every time an erroneous judgment is rendered by the trial court, then by the simple process of incorporating in the motion for a new trial the assignment that the judgment was erroneous and therefore violated said constitutional provisions, every case could be brought to this court for review. That such is not the law is so self-evident as to need no citation of authority. Neither can it be said that a constitutional question is raised by the claim that the judgment of the circuit court violates defendant's rights under section 15 of article 2 of the Constitution of the State. Said constitutional inhibition is directed solely against certain legislative acts."

This decision would not have been otherwise had the numeral characters of the due-process clause been given.

Here, as we have said over and over again, the exact manner in which the Constitution is claimed to have been violated is set out in an appropriate motion at the first opportunity, and the constitutional provision is touched by the finger of respondent with certainty and exactness so that no mistake could arise as to which section of the Constitution was intended to be relied upon, or in what manner same was involved.

The case of Davidson v. Life Ins. Co., supra, and most of the cases relied upon by relator are cases wherein the Supreme Court brushed aside constitutional questions where judgment resulted and where it was baldly pleaded that the Constitution was involved by the taking away of property "without due process of law," and these cases have no direct bearing upon the case at bar. [See State ex rel. v. Dental Board, 282 Mo. 292, 221 S. W. 70.]

We believe, therefore, that the case of State ex rel. Campbell, (97 Mo.) still stands as law. Guided with closer precision in the later cases, notably the Lohmeyer case, we are required to consider present such constitutional questions as are fairly raised at the earliest opportunity and kept alive throughout the case.

In the return of respondents to this court (in an original proceeding) the provision of the Constitution is given as article VIII, section 3. The return of Judge Huck shows that the exact provision of the Constitution was before the court by argument and pleadings, though the pleadings did not give the number of the provision.

It is well settled by a long line of cases in this State that a constitutional question is necessarily involved whenever the conclusion could only be arrived at after a construction of the Constitution. [State ex rel. Curtice v. Smith, et al., 177 Mo. 69, 75 S. W. 625; State ex rel. v. Smith, 152 Mo. 444, 54 S. W. 218; State ex rel. v. Smith, 141 Mo. 1, 41 S. W. 906; Kirkwood v. Meramec Highlands Co., 160 Mo. 111, 60 S. W. 1072; Town of Canton v. McDaniel, 91 Mo. App. 626; Placke v. Union Depot R. Co., 140 Mo. 634, 41 S. W. 915; Schuster v. Weiss, 39 Mo. App. 633; Murrell v. McGuegan, 68 Mo. App. 121.]

The circuit court could not decide the motion to strike out in favor of contestee and against contestant without deciding that a constitutional right of contestee was involved, nor that he had not waived such a constitutional right and that he was not estopped from asserting it. Before the court could pass upon contestee's motion

to quash, it must necessarily determine whether or not such certification by the city clerk in certifying to names not in controversy was unnecessarily exposing the secrecy of the ballots of such voters and the vote of this contestee, and in doing so he would be compelled to construe the Constitution.

The next question is whether the constitutional question involved has been so firmly settled that it is no longer debatable. Relator seems to rely upon the proposition that having proceeded under a certain section of the statute, and that statute having been declared to be constitutional by our Supreme Court, that there is no longer any constitutional question in the case.

Contestee, as we read the record, has not questioned the constitutionality of any statute, but insists that the action of the city clerk in certifying names not mentioned and not in controversy has in so certifying such uncontroverted names violated the Constitution, pointed out in the return of respondent as article VIII, section 3, and definitely defined in the motion as being the provision protecting the secrecy of the ballot; further, that the city clerk unnecessarily exposed the ballot of contestee and the ballots of such voters by giving their names, the number of their ballot and for whom they voted. The Constitution itself gives certain rights to voters. It provides certain safe-guards in the matter of opening ballot boxes, and it is these rights which the contestee claims have been violated.

Now, under the facts and circumstances of this case, it is not an undebatable question whether the Constitution itself has been violated. Relator relies in this connection upon the cases of Gantt v. Brown, 238 Mo. 560, 142 S. W. 422; State ex rel. v. Slover, 29 S. W. 718, and Gass v. Evans, 244 Mo. 329, 149 S. W. 628.

Neither the Gantt case nor the Gass case held in judgment the constitutional question that is presented here. What those cases hold is that the secrecy of the ballot should be kept inviolate up to the point where it becomes necessary to show fraud in the ballot boxes, or

ballots, and nothing further, but that the proof of fraud must be kept *within the averments of the petition.* The Slover case is not applicable.

The relevancy of those cases is, of course, seriously disputed by contestee. It is contended that the point made here is not passed upon by those cases for the reason, as it is said, that the city clerk of Caruthersville undertook to, and did certify to hundreds of names of voters whose ballots are not in question in any wise by contestant in his notice of contest, application for writ of recount or the writ itself, and that in so certifying to such undisputed and uncontroverted ballots he unnecessarily exposed the secrecy of such ballots of such voters, contrary to the provisions of article VIII, section 3 of the Constitution of the State, and cites many cases by which it is claimed it is made clear that the above cases relied upon by relator are not pertinent and that the constitutionality of the statute, supra, is not involved.

It is not necessary to discuss all the reasons and argumentation which the contestee made before the court *nisi,* and makes here, as to how the Constitution itself is being violated by the filing of the city clerk's return. Suffice to say there seems to be a question raised in good faith as to whether the Constitution has, in fact, been violated, and it is not a question as to whether the statutes relating to such recount are valid.

We conclude therefore that a constitutional question under the facts and circumstances of this case has been sufficiently raised and is present. Accordingly, we are without jurisdiction and the preliminary rule in prohibition is quashed and the permanent writ denied. It is so ordered. *Allen P. J.,* and *Becker, J., concur.*